IVERSON and others, Respondents, vs. UNION FREE HIGH SCHOOL DISTRICT OF THE TOWNS OF SPRINGFIELD AND CURRAN and others, Appellants.

*February 10—March 10, 1925.*

*Schools: Discretion of electors of district: When acts reviewed by court: Powers: To select site and build school: Good faith: Abuse of power: Control by court: Duty to maintain school: Pleading: General demurrer: Complaint good as to part of defendants: Prior action pending: What constitutes.*

1. If the acts of the electors of a school district are legislative in character and within the scope of the powers of the district or the electors, a court will not inquire into the motives of the legislative body in taking action thereon, even though the motives of the electors were corrupt or for the purpose of spite or revenge. p. 352.
2. A high school district is not a municipal corporation, but merely a *quasi*-municipal corporation, being an agent of the state for the sole purpose of administering the state's system of public education, and has only such powers as are conferred expressly or by necessary implication. p. 353.
3. The legislative body of a school district, if any, is the electorate, and the powers conferred upon it are those exercised at annual or special school district meetings. p. 353.
4. The designation of a schoolhouse site or provision for the construction of a building is ministerial rather than legislative in character; and the power cannot be exercised to gratify whim, caprice, or passion, but must be exercised in good faith and in the public interest. p. 354.

5. The powers conferred on school districts, whether to be exercised by electors or by the school board, are powers germane to and appropriate for the promotion of the cause of education and must be used and exercised to accomplish rather than defeat that object; and where the exercise of discretion is involved, the discretion must be exercised in a reasonable manner, and not to defeat the purpose for which such districts are created.   p. 354.

6. Where a high school district had selected a site for a building and had invested about $15,000 in a schoolhouse, but within three or four months after the purchase of the site had suspended the work of construction and voted to buy a new site merely because of caprice and spitework on the part of certain electors, and where the discontinuance of work on the site first selected will result in waste of public moneys to the injury of taxpayers, equity has jurisdiction, in a taxpayers' suit, to prevent an abuse of power, to protect the cause of education, and to prevent the waste of public funds.   p. 355.

7. *Mandamus* may issue to compel a union free high school district to maintain a high school for a period of at least nine months and to vote the necessary tax therefor.   p. 356.

8. A general demurrer to a complaint will be overruled if a cause of action is stated as to some, if not all, of defendants joining in such demurrer.   p. 357.

9. The complaint is construed to state one cause of action, notwithstanding the pleading of various acts of misconduct in changing the site, suspending school, canceling teachers' contracts, and stopping the work of construction, though such unlawful acts, if separate and distinct causes of action, would have been properly united in the complaint.   p. 357.

10. A demurrer that "there are other actions pending in the above named court in which the validity of the contracts named in this complaint are at issue," is insufficient and not equivalent to the requirement that "there is another action pending between the same parties for the same cause," under sec. 2658, Stats.   p. 357.

APPEAL from an order of the circuit court for Jackson county: G. N. RISJORD, Judge. *Affirmed.*

This is a taxpayers' action brought to restrain certain alleged unlawful acts of the defendant *Union Free High School District* and its officers. The complaint alleges the organization of the *Union Free High School District* and the election and qualification of the officers thereof; that it has never owned a free high school building, but that since

its organization it has, by arrangement with joint school district No. 5 of the village of Taylor in the towns of Springfield and Curran, provided for use of and operation of the school building for high school purposes, and during all of said time has maintained high school therein; that by reason of the large enrolment of high school students and the largely increased enrolment of pupils attending the grade school, which grade school is held in the same building, said school building has become and is wholly inadequate, and is in fact in part unsanitary and has been officially condemned by the state high school inspector of the state of Wisconsin as unsuitable for high school purposes.

That at a special meeting of the district held on the 26th day of May, 1923, the electors of said district voted to issue the bonds of the district in the sum of $47,000 for the purpose of constructing a school building for said district, and that an annual tax sufficient to pay the principal and interest of said bonds as they matured was levied; that the bonds of said district, pursuant to said resolution, were issued and sold for the sum of $49,000 and the proceeds turned over to the treasurer of said district; that at the regular annual meeting of the electors of the district held June 25, 1923, the school board was authorized to purchase a suitable piece of land for the purpose of erecting a high school building thereon, but that the board never in fact exercised the authority given them at such meeting with reference to procuring a site.

That at a special meeting of the electors of said district held on the 27th day of July, 1923, the school board was directed to take all necessary steps for the erection and construction of the proposed high school building; that said special meeting was adjourned from time to time until the 20th day of March, 1924, at which time the electors by vote duly selected a site in the village of Taylor for the location of the proposed high school, directed the board to purchase the same, and levied a tax of $1,600 on all of the taxable

property of the district for the purpose of paying for such site and provided that such tax be placed on the tax roll for the year 1924. That pursuant to such direction of the electors the then district board purchased the site so selected, paid for the same, and that the district is now the legal owner thereof.

That on or about the 19th of March, 1924, the board entered into a so-called cost-plus contract with the defendant *Carl Ahlman* to construct said high school building, by which it was agreed to pay the said *Ahlman* as his compensation a sum equal to seven per cent. of the total cost of said building; that long prior to the annual school meeting held· on June 30, 1924, the said defendant *Ahlman* commenced the construction of said school building on the site so chosen by the electors and acquired by the district, and that prior to the 8th day of August, 1924, he had excavated and constructed the basement and constructed the brick walls up to and including the first story of said building, had purchased and acquired the necessary steel beams to support the first floor, had purchased and installed window frames for said first story, and had delivered for use in said building a large amount of brick, tile, and other materials necessary for the completion thereof, and in addition had contracted for a large amount of other materials to be thereafter delivered pursuant to the terms of said contract, all of said materials being of the value of more than $11,000.

That on June 16, 1924, the defendant district, by action of its board, contracted with the defendant *Peter M. Warlum* to install a system of plumbing in said building at a cost of $2,273, and that said *Warlum,* prior to August 8, 1924, had spent a large amount of money for materials and performed a large amount of labor pursuant to said contract; that during the month of February, 1924, said school board had entered into contracts with the defendants *Alfred O'Connell, Winifred Lynch,* and *Esther Smith,* qualified high school teachers, employed them to teach in said high

school for a period of nine months beginning with the fall term of 1924, and obligated said district to pay said teachers at the following rates: to the defendant *Alfred O'Connell* $220 per month, to the defendant *Winifred Lynch* $150 per month, and to the defendant *Esther Smith* $140 per month; that said teachers entered upon the performance of their said contracts beginning with the September term in 1924, and ever since have been and now are ready and willing to fully carry out their said contracts if permitted so to do.

That prior to the commencement of this action the defendant district had disbursed a large portion of the proceeds of said bond issue in the construction of said building, to wit: it had paid to the architects employed by said district to prepare plans and specifications for the school building the sum of $1,400 and had advanced to some of the contractors for materials furnished and labor performed in the construction of said building the sum of $13,500, and that $15,000 more will have to be paid out and expended by said district for the payment of materials furnished and delivered and labor performed prior to August 8, 1924, pursuant to the contract entered into with the defendants *Ahlman* and *Warlum.*

The complaint then alleges that after said contracts had been entered into and the construction of said building commenced, and prior to the annual school district meeting held on June 30, 1924, the defendants *Weverstad, Larson, Sorenson, Halverson, Kassa, Overby,* and *Thompson,* among other electors of said district whose names are unknown to plaintiff, made and entered into an agreement to take the necessary steps to procure, if possible, the dissolution of the defendant school district by vote of the people, and, as a means of coercing and inducing the electors of said district to vote for such dissolution, then and there agreed to boycott and to threaten to boycott the electors residing in the village of Taylor by refusing to further trade with them, and

then and there agreed to circulate among the rural taxpayers of said district wilfully and grossly false, misleading, and dishonest statements as to the cost of maintaining a high school in such district, which said agreement they then and there proceeded to carry out, preparatory to a special meeting of said district, which they intended to have called and held for the purpose of voting on the question of the dissolution of the district, and which said meeting they in fact procured to be held in said district on the 19th day of July, 1924, which resulted in a vote against the dissolution of the district; that at the time of making their said unlawful agreement the said conspirators further agreed that if they failed to bring about a dissolution of the district at said special meeting so to be called and held on the question of dissolution, they would cause and induce said district to disregard and repudiate all of its obligations, to refuse to exercise any of its powers or perform any of its duties, to forbid and prevent its officers and board from exercising any of their powers or performing any of their duties, and generally to completely incapacitate and disable it from any longer functioning as a union free high school district, to the end that nothing would be preserved of said district except its bare corporate form and name; that to accomplish such purposes the said conspirators held many private meetings at schoolhouses and residences in the town of Springfield, collected funds to be used for such unlawful purposes, and sent agents of such conspirators into each district for the purpose of advising the electors of the proposed plan and enlisting their support, as a result of all of which a large number of the electors of the town of Springfield joined said conspirators in their said unlawful purpose; that at the annual district meeting held on June 30, 1924, the defendants *Weverstad* and *Larson,* and those acting in collusion with them for the aforesaid purposes, caused the said *Weverstad* to be elected treasurer and the defendant *Larson* as clerk for the ensuing year, with the understanding that

such officers when elected would aid in carrying out such unlawful purposes; that at said annual school district meeting the said conspirators procured a vote of the electors in attendance not to maintain any school in said district for the year 1924–1925; not to provide any funds, by taxation or otherwise, for school purposes for such year and instructed the board not to raise or borrow any money for such purposes, and further voted to purchase for a schoolhouse site, from the defendant *Weverstad,* one undescribed acre of land of his farm situated about two miles from the village of Taylor, though well knowing that such a site would be wholly unsuitable and unnecessary for any purpose of the district, and without any intention of ever building thereon or utilizing the same for any purpose of the district.

That immediately after said school meeting the said *Weverstad* and *Larson,* without any authority having been given them so to do by the district, commenced an action in the circuit court for Jackson county in the name of the district against the defendants *Ahlman, Warlum,* and others for the purpose of perpetually enjoining them from further proceeding with their said respective contracts, procured a temporary injunction to be issued in that behalf, which was thereafter vacated and set aside, and the permanent injunction prayed for by the plaintiffs was denied July 25, 1924.

That at a pretended meeting of the electors of said district held on July 28, 1924, there was adopted a resolution that no school be held during the year 1924–1925; a resolution that the contracts entered into by the school board with the three teachers be canceled; a resolution that the building site of said school district be changed to a parcel of land therein described (evidently the site of *Weverstad's* farm) to correspond with the motion adopted at the annual meeting; a resolution instructing the school board to stop the construction of the school building then being erected in the village of Taylor; a resolution instructing the school

board to continue the injunction proceedings commenced by them "in order that all the questions as to the legality of the meetings, selection of the site, construction of the building, and other questions of doubt may be fully settled;" that on July 28, 1924, the defendants *Weverstad* and *Larson*, without the consent of the director of said school district, served on the defendant contractors and defendant teachers a notice to the effect that the school district rescinded and canceled their contracts, and directed them to make no further efforts to perform the same; that as a result of such notices the contractors quit work and the teachers threatened to quit work, thereby closing the high school of said district; that the defendants *Ahlman* and *Warlum* have commenced an action in the circuit court for Jackson county against the defendant district to collect damages alleged to have been sustained by them by the pretended action of said school district in attempting to rescind and cancel their respective contracts, and the said teachers have commenced an action to recover their salaries for the first month under their contracts, and threatened to and will, unless enjoined by the order of this court, commence further action to collect additional salary since becoming due to them; that such multiplicity of actions will necessarily result in the public funds being dissipated and lost in litigation by the payment of damages sustained by the several contractors and teachers, to the great and irreparable loss of all the taxpayers of said towns, unless the prosecution of such actions be enjoined by the order of this court. Further proceedings in said actions so commenced by said contractors and teachers have been heretofore stayed by order of court made by consent of parties pending the trial and determination of this action.

That the said school building so partially constructed is exposed to the weather and elements and unless completed will rapidly deteriorate, and all moneys invested in the site and in the purchase of materials and the performance of

labor in its construction up to this time will be wholly wasted and lost to the taxpayers of the district; that the school district board has failed to procure insurance on said partially completed building; that a large amount of plumbing and other material has been purchased by the defendant *Ahlman* for use in said building, including the ventilating system, all of which has been shipped and is now lying at the depot in the village of Taylor ready for, delivery, deteriorating in value and subject to constantly accruing storage charges.

The complaint then alleges at considerable length the damages that will result to said district by reason of the deterioration of property, dissipation of funds, the expense of litigation, etc., unless the relief prayed for in the complaint be granted. The prayer of the complaint is for the following judgment:

1. That the contracts heretofore made by and between the defendant school district and the defendant building contractors and teachers are valid, subsisting, and binding contracts, and that the action of said district in attempting to cancel and rescind said contracts and each of them is and was wholly null and void.

2. That the defendant district and its officers be enjoined and restrained from further prosecuting that certain action now pending in this court wherein said district as plaintiff asks that the defendant building contractors be enjoined from completing their respective contracts, and that said defendant district and its officers be further enjoined from in any manner interfering with the completion of said contracts by said building contractors.

3. That said defendant district and its officers be required and directed by such judgment to pay the said building contractors and teachers all sums due and to become due them under and by virtue of their respective contracts.

4. That said defendant district and its officers be perpetually enjoined and restrained from using any portion

of the proceeds of the said district bonds for any purpose other than constructing the high school building now partially erected on the site purchased by the district for that purpose and now owned by it.

5. That said defendant district and its officers be perpetually enjoined from acquiring, by purchase or otherwise, any lands from the defendant *Weverstad* while he is an officer of said district.

6. That the amount of damage sustained by the defendant district and the taxpayers thereof by reason of the unlawful acts of the defendants, hereinbefore set forth, be fixed and determined and that judgment for such amount be entered in favor of the defendant district and against the defendants responsible, in whole or in part, for such damage.

7. That the plaintiffs have such other and further relief as to the court shall seem just and equitable, together with their costs and disbursements herein.

It appears that subsequent to the commencement of the action fifty taxpayers of the district were interpleaded and made parties defendant. We do not, however, find the order of interpleader in the record, and it does not appear who these defendants are nor why they were interpleaded. The defendant school district, *Weverstad, Larson, Sorenson, Halverson, Kassa, Overby,* and *Thompson,* and the interpleaded taxpayers, demurred to the complaint upon the grounds that several causes of action have been improperly united; that it appears upon the face of said complaint that another action has been commenced and is now pending in the above named court by the defendant *Carl F. Ahlman* against the defendant school district to recover damages for the alleged breach of the said alleged contract between said school district and said *Ahlman,* "and these defendants demur to the complaint herein so far as it relates to said matters." They demurred to that portion of said complaint as to the alleged contract and breach thereof with the school teachers for the reason that it appears from the face of said

complaint that such allegations do not state .facts sufficient to constitute a cause of action against the demurring defendants. From an order overruling said demurrer defendants bring this appeal.

*Ole J. Eggum* of Whitehall and *Wm. H. Frawley* of Eau Claire, for the appellants.

For the respondents there was a brief by *Bundy, Beach & Holland* of Eau Claire, and oral argument by *T. M. Holland.*

Owen, J. It is apparent from the allegations of the complaint that the acts of the district board at the district meeting, of which complaint is made, are the result of a school district row, and that the closing of the school, the change of the school site, and the cessation of building operations are pure spitework and proceed from motives of revenge rather than the promotion of the public welfare. But however ill-advised or destructive of public interest the conduct here complained of may be, the question whether the courts can interfere depends upon certain preliminary considerations which will immediately be taken up.

The principal misconduct involved is that of the electors of the school district. They voted to change the schoolhouse site, to suspend school during the year 1924–1925, and stop the work of constructing the new schoolhouse. Even though they did not initiate all of these policies, they indorsed and approved every one of them at the special meeting held July 28, 1924. If these acts were legislative in character and within the scope of the powers of the school district or the electors thereof, then a court will not inquire into the motives of the legislative body in taking action thereon. Even though their motives were corrupt, or for the purposes of spite or revenge, if the action taken was within the range of their legal discretion, the result of their action is immune from judicial interference. *State ex rel. Rose v. Superior Court,* 105 Wis. 651, 81 N. W. 1046.

The school district is not a municipal corporation. It is very grudgingly accorded the rank of a *quasi*-municipal corporation. 1 McQuillin, Mun. Corp. § 113; 24 Ruling Case Law, 564. It is but the agent of the state for the sole purpose of administering the state's system of public education and has only such powers as are conferred expressly or by necessary implication. 24 Ruling Case Law, 565. If a school district have a legislative body, that body is no doubt the electorate, and the powers conferred upon them are exercised at the annual or special school district meetings.

Even though a given body may be classed as a legislative body, it does not follow that all the powers exercised by it are legislative in character. The powers conferred and which may be exercised at school district meetings are defined in sec. 40.56 of the Statutes. Among those powers we find these:

"(3) To vote such tax as the meeting shall deem sufficient to purchase or lease a suitable site for the free high school; to build, hire or purchase a schoolhouse; to keep in repair and furnish the same with necessary furniture, ventilating and heating apparatus, and to provide for the equipment and maintenance of the free high school.

"(4) To authorize and direct the sale of any free high schoolhouse site, or other property belonging to the free high school district when the same shall no longer be needed for use in the district."

"(8) To determine the length of time a free high school shall be taught in such free high school district during the ensuing year, which time shall not be less than nine months."

In order to bring the acts here complained of within the immunity of the rule enunciated in *State ex rel. Rose v. Superior Court*, 105 Wis. 651, 81 N. W. 1046, it must appear that the electors when assembled in their district meetings not only constitute a legislative body, but that the purchase or lease of a suitable site for a high school building or a schoolhouse, and prescribing the length of time when

school shall be maintained during the following year, constitute legislative acts and an exercise of legislative power. A legislative act has been defined generally to be an act of the legislative department of the government by which the law to be applied in future cases under particular states of fact is established in the form of a statute, ordinance, resolution, or other written form. *Smith v. Strother,* 68 Cal. 194, 8 Pac. 852. Legislative power is defined generally to be "authority exercised by that department of government which is charged with the enactment of laws, as distinguished from the executive and judicial functions." 2 Bouvier, Law Dict. (Rawle's 3d Rev.) 1915. While these general definitions may not be easy of application in specific instances for the purpose of determining whether the action of public bodies is legislative in character, we have no hesitancy in saying that the designation of a schoolhouse site, or providing for the building of a schoolhouse, is ministerial rather than legislative in character, and that this power cannot be exercised to gratify whim, caprice, or passion, but must be exercised in good faith and in the public interest. The laying out of a highway more nearly approximates the exercise of legislative power than does the selection of a schoolhouse site, yet this court has not hesitated to annul the action of a town board in laying out a highway where the board was induced to take such action by considerations other than that of the public welfare. *State ex rel. Dosch v. Ryan,* 127 Wis. 599, 106 N. W. 1093.

The powers conferred upon school districts, whether to be exercised by the electors in their district meetings or by the school board, are powers germane to and appropriate for the promotion of the cause of education, and they must be used and exercised for the purpose of accomplishing rather than defeating that object. Of course, in the exercise of this power some measure of discretion on the part of those in whom it is vested is permissible, but that discretion is a reasonable one and cannot be so exercised as to utterly

defeat the purposes for which school districts are created. No other purpose can be ascribed to the various actions of this school district which are made the subject of the complaint in this case.

A school district site was selected and paid for, and after about $15,000 of the funds of the district had been invested in a schoolhouse, and while the work of construction was in progress, the school district ordered a suspension of the work of construction and voted to buy a new site—all this within a period of three or four months after the site was purchased. The allegations of the complaint fully negative any thought that this was done for the purpose of promoting the cause of education in that community. If the construction of the building be not permitted to proceed, it will result in a most shocking waste of public moneys, to the great injury of the taxpayers of the district. If such caprice and spitework be approved, then, when the vicissitudes of politics shall place the present minority in control of the district meeting, the site may again be changed, and so on *ad libitum,* resulting in a pitiful squandering of public funds and the crucifixion of the cause of education. Under these circumstances the decisions of this court furnish ample authority for the interference of a court of equity, at the suit of taxpayers, to prevent a most striking abuse of power, to protect the cause of education, and to prevent the waste of public funds. *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964; *Estate of Cole,* 102 Wis. 1, 78 N. W. 402; *Webster v. Douglas Co.* 102 Wis. 181, 77 N. W. 885, 78 N. W. 451; *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460; *Dorner v. School Dist.* 137 Wis. 147, 118 N. W. 353; *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164; *Warden v. Hart,* 162 Wis. 495, 156 N. W. 466.

The action of the school district in voting that no school should be held during the year 1924–1925 was equally unwarranted. The statutes plainly contemplate that at least

nine months' school shall be maintained every year in every union free high school district. Sec. 40.56 provides, among the powers of the school meeting, the power "To determine the length of time a free high school shall be taught in such free high school district during the ensuing year, *which time shall not be less than nine months."* Sub. (4), sec. 40.52, provides in substance that if the electors shall not vote a tax sufficient to maintain a free high school for the term of at least nine months during the current year, the free high school board must, on or before the Wednesday next following said third Monday of November, determine the sum necessary to be raised to so maintain such free high school, and the clerk shall forthwith certify to the proper town, city, or village clerks the amount so fixed. Upon receipt of this certificate the town, village, and city clerks shall assess the same as other taxes are assessed.

It will be seen that the legislature has left no discretion on the part of union free high school districts so far as the maintenance of school therein for a period of nine months each year is concerned. The district may provide for the maintenance of school for a longer period, but school must be maintained for at least nine months. If the electors fail to vote the necessary tax, it is made the imperative duty of the district board to determine the sum necessary for that purpose, certify the same to the proper town, village, or city clerks, and such town, village, or city clerks must assess the same as other taxes are assessed. It goes without saying that if either the school district board or the respective town, village, or city clerks fail in the performance of these duties, *mandamus* may issue to compel their performance.

It does not appear from the allegations of the complaint that there was any insuperable difficulty of a physical nature to prevent the maintenance of school during the year 1924–1925, and, so far as the allegations of the complaint are concerned, it appears that the action of the school district in this respect was wholly unwarranted and unjustified.

We do not see any justification for the presence of the fifty taxpayers interpleaded as defendants. But since a general demurrer to a complaint will be overruled if a cause of action is stated as to some, though not all, of the defendants joining in such demurrer (*St. Croix T. Co. v. Joseph,* 142 Wis. 55, 124 N. W. 1049), we have already said enough to indicate that the order overruling the demurrer should be affirmed. The complaint states facts sufficient to constitute a cause of action and grounds for equitable relief.

Although one ground of demurrer is that "it appears from said complaint that several causes of action are improperly united," this ground is not seriously urged here. Plainly the complaint states but one cause of action, and that for equitable relief from the unlawful acts of the school district,—so closely united and connected and all contributing to the accomplishment of a common purpose as to constitute but a single cause of action. But if each of the unlawful acts complained of should constitute separate and distinct causes of action, they are properly united in the complaint.

Another ground of demurrer is that "it appears from the face of the complaint that there are other actions pending in the above named court, commenced prior to the commencement of this action, in which the validity of the contracts named in this complaint are at issue . . . and are undecided and undetermined." The statute (sec. 2658) provides as a ground for demurrer that "there is another action pending between the same parties for the same cause." The form of the demurrer on this ground falls far short of the statutory requirement. It does not appear from the face of the complaint that "there is another action pending between the same parties for the same cause," neither does the demurrer specify any such thing. It simply specifies that "there are other actions pending in the above named court in which the validity of the contracts named in this complaint are at issue." This is far from saying that there

is another action pending between the same parties for the same cause and does not sufficiently respond to the statutory requirement.

While it is not necessary for us to pass upon the validity of the contract made by the school district with the defendant *Carl Ahlman* for the construction and erection of the schoolhouse, that question was briefed and argued, and with the thought that an expression of our views upon that question at this time may contribute either to an amicable compromise and adjustment of all matters in controversy between the parties, or to a speedy disposition of all such matters by the court, we will content ourselves with saying that we discover nothing illegal or unlawful about this contract.

*By the Court.*—Order affirmed.