STATE EX REL. LEE, ATTY. GEN. v.
CONTINENTAL OIL CO.

(No. 1891; April 16, 1935; 43 Pac. (2d) 686)

For the plaintiff, there was a brief by *Ray E. Lee,* Attorney General; *Oscar O. Natwick,* Deputy Attorney General, and *Wm. C. Snow,* Assistant Attorney General, of Cheyenne, and oral arguments by *Messrs. Lee* and *Natwick.*

For the defendant, there was a brief by *John R. Moran* and *Smith, Brock, Akolt & Campbell,* all of Denver, Colorado, and *W. L. Walls,* of Cheyenne, and oral argument by *Messrs. Moran, Akolt* and *Walls.*

RINER, Justice.

This cause comes to this court upon reserved constitutional questions undertaken to be submitted pursuant to the provisions of sections 89-5001 to 89-5003 inclusive, W. R. S. 1931, and said to be important and difficult questions arising upon the record thereof. The litigation was instituted in the district court of Laramie County on behalf of the State of Wyoming, by its attorney general, and is in the nature of a *Quo Warranto* proceeding to forfeit the permit of the defendant The Continental Oil Company, a corporation created and existing under the laws of the state of Delaware, to do business in this state. Article 2, Chapter 117, dealing with the subject matter of "Unfair Competition," and particularly sections 117-201 and 117-202 thereof, W. R. S. 1931, is relied upon by the plaintiff

as supplying the statutory authority for the action thus commenced.

Section 117-202, supra, indicates the procedure to be followed when its preceding section is invoked, and prescribes one of the penalties imposed by Article 2 aforesaid, when there occurs an adjudged violation of the terms of the substantive law embodied in section 117-201. The section last mentioned reads:

"Any person, firm or corporation, foreign or domestic, doing business in the state of Wyoming and engaged in the production, manufacture, sale, or distribution of any commodity in general use, that shall make, enter into, form, or be a party to any plan, agreement, consolidation or combination of any kind whatsoever to prevent competition, or to control or influence production or prices thereof, or that shall, intentionally, for the purpose of destroying competition, or gaining unjust and unreasonable profits, discriminate between different sections, communities or cities of this state, by selling such commodity at a lower rate in one section, community or city, or any portion thereof, than is charged for such commodity in another section, community or city, after equalizing the distance from the point of production, manufacture, or distribution and the freight rates therefrom, or shall charge a greater rate within this state for any commodity or manufacture, made or produced within this state than such commodity or manufacture is sold for in any other state, the freight rates being equal or less from the point of production or distribution, shall be deemed guilty of unfair discrimination; provided, however, that this article shall not apply to any case where by reason of different railroad rates or other natural things in favor of any manufacturer or dealer, of goods of this or another state, such manufacturer or dealer sells at a different price than he does to another, in order to meet the competitive dealer; provided, further, that this article shall not apply to any case where any manufacturer of, or dealer in goods manufactured or produced in this state sells products in one place cheaper than in another to meet upon the same or more favorable basis any competition from

foreign states, or this state; provided, further, that this article shall not prevent the sale of goods at proper commercial discounts customary in the sale of such particular goods."

The action appears to have progressed in the district court to the filing by the plaintiff of an amended petition, which, summarized, is as follows: There are two alleged causes of action set forth in the pleading. The paragraph numbered one of the first cause of action states that the defendant, a Delaware corporation, qualified to and carrying on business in this state, has been since September 1, 1931, and to the date of the filing of the petition in the action (September 28, 1933), engaged in the production, manufacture, sale and distribution of gasoline, a commodity in general use, by means of refineries and railroad carrying tanks, in which the gasoline is brought from factories and refineries to various distributing places in Wyoming and adjoining states, and there placed in storage tanks, and thereafter distributed to consumers and purchasers; and that the defendant possesses such an extensive system of carrying tanks, storage tanks and tank wagons in the various cities, towns and communities of this and adjoining states as to constitute the defendant the largest producer, manufacturer, seller, and distributor of gasoline in Wyoming.

The second paragraph, following substantially the language of the statute quoted as above, alleges that the defendant, since September, 1931, to the date of filing the petition, has intentionally and unlawfully charged a greater rate and price within the state of Wyoming for gasoline made or produced within said state than such gasoline has been sold for by defendant in adjoining states, the freight rates being equal or less from the point of production or distribution. Following this statement there are listed certain specific items and times of alleged discrimination in sales by

the defendant as between places within and without Wyoming.

The third paragraph of the first cause of action, undertakes to show compliance with the procedural requirements of § 117-201, supra, and avers that prior to May 31, 1933, complaint had been made to the attorney general that the defendant had done the acts charged against it in the second paragraph aforesaid. The fourth paragraph thereof states that on the date last mentioned the attorney general served a written notice upon the defendant reciting the fact of complaint having been made to him that defendant had violated the provisions of § 117-201, W. R. S. 1931, and that a hearing would be had relative to the matter at his office on June 13, 1933, when defendant would be given an opportunity to present lawful or valid reasons why its permit to do business in the state of Wyoming should not be immediately forfeited; and that the hearing was held and that in the judgment of the attorney general the defendant had conducted its business so as to be guilty of unfair discrimination as charged in the second paragraph of said first cause of action. The fifth and last paragraph of that cause of action asserted that the defendant, in carrying out and making effective the discrimination thus alleged, unlawfully required those who bought gasoline in Wyoming to pay an average of three cents more per gallon than the amount charged by said defendant for gasoline of the same grade and quality sold in adjoining states to purchasers there.

The second cause of action in plaintiff's pleading, through its paragraphs numbered one and two respectively, presents substantially the same allegations as have already been described as contained in paragraph numbered one of the first cause of action.

The second cause of action, third paragraph, alleges also following the general language of the statute, that

the defendant, in carrying on its business in this state, intentionally and unlawfully has "made, entered into, formed and become a party to certain plans, an agreement, consolidation and combination to prevent competition and to control and influence prices of gasoline in Wyoming, and has intentionally and unlawfully, for the purpose of destroying competition and gaining unjust and unreasonable profits, discriminated between different sections, communities or cities of Wyoming by selling such gasoline at a lower rate in one section, community or city than has been charged for such gasoline in another section, community or city after equalizing the distance from the point of production, manufacture or distribution and the freight rates thereon." Certain corporations, including defendant, are then named as parties to the "said plans, the said agreement and consolidation and combination," the exact date thereof being stated as unknown to plaintiff. It is thereupon averred that the agreement referred to is verbal, whereby the corporations named agreed to prevent competition from other persons and corporations in this state "by controlling and influencing prices of gasoline in Wyoming, and to destroy the competition of and from persons and corporations not a party to said agreement," so that those who were parties thereto "might gain unjust and unreasonably large profits from the sale of gasoline in Wyoming," and "destroy the business and competition from" those engaged in the gasoline business who were not a party to said agreement. Certain towns and cities of this state are then mentioned as the "sections, communities and cities * * * affected by the discrimination in this paragraph referred to." The fourth paragraph of said second cause of action states that prior to August 31, 1931, complaint had been made to the attorney general that the defendant, in carrying on its business in this state had done those things charged against it in the

third paragraph of this second cause of action. The fifth paragraph thereof details the nature of the notice given defendant as set out in the fourth paragraph of the first cause of action, that a hearing was had thereon and that it was the judgment of the attorney general that the defendant was guilty of unfair discrimination because it had in fact done the acts as alleged in the third paragraph of this, the second cause of action. Plaintiff prays that the permit of defendant to do business in the state of Wyoming "be immediately forfeited and for its costs."

The defendant demurred to each of these alleged causes of action in plaintiff's amended petition on the ground that each failed to "state facts sufficient to constitute a cause of action against this defendant" and also that Article 2, Chapter 117, W. R. S. 1931, upon which both causes of action were undertaken to be based, as applied to the pleaded facts in each of said causes of action, was repugnant to certain enumerated provisions of the constitution of the United States, and also of the constitution of Wyoming. The sixth ground of defendant's demurrer as to each cause of action is "that said statute has been superseded by the Act of Congress of the United States enacted June 16, 1933, known as the 'National Industrial Recovery Act' and the Code of Fair Competition for the Petroleum Industry adopted pursuant thereto."

The district court did not decide any of the questions of law thus raised, but merely entered an order which, omitting the recital preceding it, reads:

"IT IS, THEREFORE, HEREBY ORDERED by the Court, upon the Court's own motion, that the following questions which the Court finds to be important and difficult constitutional questions raised by said demurrer to said amended petition be, and they are hereby, reserved and certified and referred to the Supreme Court of the State of Wyoming for hearing and determination."

Some twenty questions are thereupon recited which, except question number nineteen, inquire as to the validity of Article 2 of Chapter 117, supra, as applied to the facts averred in the two alleged causes of action when tested by certain enumerated provisions of the federal constitution and the constitution of this state. Question number nineteen is to the following effect:

"Is said Article 2 of Chapter 117 of the Wyoming Revised Statutes, 1931, superseded by the Act of Congress of the United States enacted June 16, 1933, known as the National Industrial Recovery Act and the Code of Fair Competition for the Petroleum Industry adopted pursuant thereto?"

In thus certifying these questions for a determination by this court, from an examination of the papers and the contentions of the parties, it is apparent that a number of its previous decisions defining its jurisdiction to determine constitutional questions reserved for its decision by order of the district court have been overlooked. In this connection it will be recalled as stated by 12 C. J. 780 that:

"It is a well-settled principle that the constitutionality of a statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the suit in which the constitutionality of such statute has been drawn in question."

See also 6 R. C. L. 76, 77, § 74.

In full accord with that principle we find the case of State v. Kelley, et al., 17 Wyo. 335, 98 P. 886. There an information had been filed in the district court charging defendants jointly with having committed a misdemeanor as defined in § 3, Chapter 91, Session Laws of Wyoming, 1907, amending an earlier statute dealing with certain pure food requirements in this state. The information was demurred to by one of the defendants upon five alleged grounds, the first thereof

being that the facts stated in the information did not constitute an offense punishable by the laws of this state; the second that no intent was alleged in the information and that proof of intent was necessary to make out the offense charged, and the remaining three grounds challenged the validity of the law under which the information in the case had been filed as contravening certain enumerated provisions, not only of the constitution of Wyoming, but also the National constitution. As in the case at bar the district court, upon its own motion and without further action on its part, certified a number of alleged constitutional questions to this court for its disposition as arising upon the issues of law joined upon the demurrer as aforesaid. Returning the case to the district court with the questions unanswered, in the course of the opinion this was said:

"The decision of the first ground of demurrer may or may not involve the constitutionality of the statute. This court is precluded from determining that question in the first instance. The certificate of the trial judge is not conclusive on that question. The demurrer is twofold, it challenges the sufficiency of the facts alleged to constitute an offense within the provisions of the statute, and further that the statute is unconstitutional. The former question can not be determined by this court in the first instance, and the constitutionality of the statute does not arise upon the record until the sufficiency of the information upon other grounds has been determined. It is a uniform rule that courts do not pass upon the constitutionality of a statute unless the necessity therefor in the case pending clearly appears (Cooley Const. Lim., Sec. 163) and no other constitutional question is here sought to be presented. The decision of the constitutional question must be necessary to a decision of the pending case. It can not be said that this court should decide the constitutionality of the statute because it might become necessary to a decision of the pending case when after such decision the lower court upon consideration might be of the opinion that the demurrer should be

sustained upon other grounds which defendants in their brief insist upon the right to present for the ruling of that court. The question here presented in that event would be practically a moot question. We are of the opinion that a constitutional question should be shown by the record to have been fairly presented to the court below and that its decision is necessary upon the pending case and that unless the facts appear by the record that this court ought not and is not required to express its judgment thereon. * * *

"For these reasons we are of the opinion that it would be not only improper to decide the constitutional question sought to be presented on the brief and the reserved questions, but that this court is without jurisdiction to do so until it shall plainly appear that such decision is necessary to the disposition of the demurrer."

The subsequent case of State v. Smart, 18 Wyo. 436, 110 P. 715, was decided somewhat more than a year and a half later and involved an attempted procedure in certifying alleged constitutional questions here for decision under circumstances substantially similar to those appearing in State v. Kelley, et al., supra. Concluding its discussion of the case the court used the following language:

"And it has been uniformly held that this court will examine the original papers certified to it by the District Court in order to determine whether such questions arise in the action or proceeding, and whether their determination is necessary to a disposition of the case; it being the general rule that the constitutionality of a statute will not be determined unless necessarily involved in the case before the court. * * *

"The first ground of the demurrer is that 'the facts stated in the said information do not constitute an offense punishable by the laws of the State of Wyoming.' The second ground is that 'the intent with which and by which said alleged and pretended offense was committed, is not alleged, and that proof of such intent is necessary to make out the offense charged in said information.' The other grounds of demurrer—

some sixteen in number—go to the question of the constitutionality of the statute. The second ground of the demurrer is one of the grounds therefor stated in the statute. Sec. 53, R. S. 1899. It appears clear to us that that ground does not involve any constitutional question, and equally clear that if the information is fatally defective for that reason, under the statute as it is written—a question this court can not decide in the first instance—then it becomes immaterial whether the statute is or is not constitutional. To our minds the case comes within the rule announced in State v. Kelly, et al., supra, where the question is more fully discussed. We should not hesitate to decide constitutional questions when we have the right to do so; neither should we assume to do so, on reserved questions, where the original papers and record presented do not show such decision to be necessary to a determination of the case. For the reasons above stated the motion to remand will be sustained and the original papers and record in the case will be returned to the District Court of Albany County, with the questions unanswered."

Again, in Budge, et al. v. Board of County Commissioners of Lincoln County, et al., 29 Wyo. 35, 208 P. 874, this court had before it a reserved constitutional question relative to the validity of Chapter 53 of the Session Laws of Wyoming of 1921, but it appeared in the case that the answer to such question could not be given until it had first been determined by the district court whether another statute had been repealed by the chapter aforesaid through the use of apt language. The question was accordingly left unanswered here.

The situation presented in the case at bar then, delineated above, and as we find it from an inspection of the certified papers before us, and a careful study of the contentions advanced by the parties thereon is succinctly this: Plaintiff's pleading, as regards each of its alleged causes of action, is questioned by a general demurrer on the part of defendant. Upon the issues thus raised it must be determined by the district court

whether, by appropriate allegations, a cause of action has been made out under the terms of Article 2, Chapter 117, supra, viewed alone. Again, though doubtless it could be raised under the general demurrer just referred to, there is presented for decision by the district court by a separately stated ground of demurrer directed against each alleged cause of action the specific question whether Article 2, Chapter 117 aforesaid has been superseded by the Act of Congress of the United States commonly known as the "National Industrial Recovery Act," and the "Code of Fair Competition for the Petroleum Industry" adopted thereunder. As heretofore indicated this last question has been incorporated also in the list of alleged constitutional questions certified for our determination.

Entirely aside from the first question suggested in the foregoing paragraph, it is plain that the other one presents a defense to the action not to be disposed of lightly. The point has been argued forcibly and at considerable length, both orally and in defendant's brief. Apropos this matter it may be noted that 12 C. J. 17 states that:

"Where Congress regulates commerce by enacting a statute, within its competency, that covers the same subject matter and is in direct conflict with a state statute, the power of Congress is not only supreme and paramount but also exclusive, superseding the state law and excluding additional or further regulation covering the same subject by the state legislature."

In similar vein 5 R. C. L. 704, § 16, declares that:

"When Congress sees proper to act with respect to any particular branch of interstate or foreign commerce, state regulations in conflict therewith or acting upon the same subject are thereby suspended, whether such state regulations were adopted with respect to local matters incidentally affected such commerce or as aids thereto, or were enacted as a proper exercise of the police power."

And the ultimate authority on this subject, the National Supreme Court, in Pennsylvania R. Co. v. Public Service Commission of Commonwealth of Pennsylvania, et al., 250 U. S. 566; 40 Sup. Ct. 36, 63 L. Ed. 1142, has said:

"But when the United States has exercised its exclusive powers over interstate commerce so far as to take possession of the field, the States no more can supplement its requirements than they can annul them."

The terse statement of Mr. Justice Holmes in Charleston & Western Carolina Railway Company v. Varnville Furniture Company, 237 U. S. 597; 35 Sup. Ct. 715; 59 L. Ed. 1137, is pertinent here:

"When Congress has taken the particular subject matter in hand, coincidence is as ineffective as opposition, and a state law is not to be declared a help because it attempts to go farther than Congress has seen fit to go."

A later utterance concerning the matter from the same court appears in Oregon-Washington R. & Nav. Co. v. State of Washington, 270 U. S. 87; 46 Sup. Ct. 279; 70 L. Ed. 482, in this language:

"The rule is that there is a field in which the local interests of states touch so closely upon interstate commerce that, in the silence of Congress on the subject, the states may exercise their police powers. * * * But, when Congress has acted and occupied the field * * * the power of the states to act is prevented or suspended."

As indicating the scope of Congressional authority when interstate commerce becomes interlocked with intrastate commerce, in Railroad Commission of Wisconsin, et al. v. Chicago, B. & Q. R. Co., 257 U. S. 563; 42 Sup. Ct. 232; 66 L. Ed. 371, the court has remarked relative to the proviso governing the Interstate Commerce Commission, forbidding it to regulate traffic wholly within a state that:

"Commerce is a unit and does not regard state lines, and while under the Constitution, interstate and intrastate commerce are ordinarily subject to regulation by different sovereignties, yet when they are so mingled together that the supreme authority, the Nation, cannot exercise complete effective control over interstate commerce without incidental regulation of intrastate commerce, such incidental regulation is not an invasion of state authority or a violation of the proviso."

Our attention has been directed to the following significant provisions of the Code of Fair Competition for the Petroleum Industry, as approved by the President of the United States: Its "Preamble" states, among other objects, that it was adopted:

"To restrain and avoid recurring abuses in the production, transportation and marketing of petroleum and its products which directly obstruct the free flow of interstate and foreign commerce by causing abnormal and disturbing temporary fluctuations in the supply of petroleum or its products that are not responsive to actual demand and prices and disrupt the normal flow, of interstate commerce in petroleum and its products; and to prevent the growth of monopoly resulting from unfair competitive practices."

Section 5 of Article I reads:

"Agreements between competitors within the industry for the purpose of accomplishing the objectives of this code, or any of them, or for the purposes of eliminating wasteful duplication of manufacturing, transportation and marketing facilities are hereby expressly permitted, but such agreements shall not become operative until specifically approved by the President, and suitable public notice shall have been given of such agreements. Such agreements may at any time be disapproved by the President and upon such disapproval they shall cease to be valid."

Rule 2 of Article V of said Code, dealing with the subject of "Marketing," is as follows:

"Whenever any merchant or vendor of any and all types of merchandise offers for sale at wholesale or

retail motor fuels, motor lubricants, motor gasoline, heating oils or naptha of a petroleum nature, he shall, insofar as his business pertains to those products, be bound by the regulations of this Code."

Rule 4 of the same Article provides:

"Refiners, distributors, jobbers, wholesalers, retailers and others engaged in the sale of petroleum shall not sell any such refined petroleum products below cost of manufacturing or importation into the state where offered for sale, plus reasonable expenses in the cost of marketing as observed under prudent management, fixed taxes and inspection fees by the Federal or State government or any political sub-division thereof, provided, however, that any person is permitted to meet competition in violation of this rule concerning which he has made complaint to the Planning and Coordination Committee, or any authorized agency thereof, but only pending action thereon."

Other regulations bearing on the subject matter of the competitive sale of gasoline appear in the Code, but enough have been given above to disclose the broad sweep of its provisions, which have been placed in operation throughout the Nation in consequence of the authority granted by the National Industrial Recovery Act already mentioned. We do not understand either of the parties in this cause to question the constitutionality of that Act or the validity of the Code aforesaid, adopted pursuant to it.

In view of the authorities cited hereinabove and the avowed purpose and elaborate requirements of the Code regulations set forth above, it is plain that the question whether such Code in its entirety has superseded and suspended the operation of Article 2, Chapter 117, W. R. S. 1931, is at least one of the vital problems in the case. That plaintiff thus regards the point would seem to be so, as we find that the attorney general through his supplemental brief filed in this court has frankly stated that, "We believe that it can

be said that this Oil Code, adopted pursuant to the National Recovery Act, covers the subject which is embraced in the statutes of Wyoming, which we are seeking to enforce in the present action." In connection with this statement it may be properly recalled that the expressed purpose of Article 2, Chapter 117, aforesaid, as indicated by its title as originally written by the Wyoming Legislature in 1911, and as its sections have been subsequently amended and re-enacted, was to "Prohibit * * * Unfair Competition." It will be observed that the framework of the Article aforesaid clearly undertakes to effectuate that purpose.

But neither this question nor the other previously suggested as necessary for decision by the district court—and there are still other questions of the same character which can and should be disposed of under the general demurrer aforesaid — present constitutional questions which we are authorized to decide at the present stage of the case. Questions involving statutory construction merely, and arising in consequence of the incompatibility of statutes, or in the course of interpreting the effect of their language do not raise any constitutional question. 12 C. J. 784, 785; State v. Smart, 22 Wyo. 154; 136 P. 452. As we have seen, problems of this character must first be solved by the trial court before questions involving constitutions may be reserved for decision here.

It may be again emphasized also that the certificate of the trial judge or his order reserving alleged constitutional questions can not control the matter. If the original papers certified and the briefs of the parties thereon, upon our examination, disclose that other than constitutional questions are necessarily involved and are relied upon, and such questions have either not been previously decided finally, so far as the district court is concerned, or have not been waived by the par-

ties, we regard that our jurisdiction to answer constitutional questions is lacking.

In the case at bar, inasmuch as it appears that the court below has not disposed of sundry questions which have not been waived and which must necessarily be determined before we are authorized to consider and respond to the certified inquiries relative to the effect of certain constitutional provisions on Article 2, Chapter 117, W. R. S. 1931, we are obliged to conclude that an order should be entered directing the return of the case with the submitted questions unanswered.

KIMBALL, Ch. J., and BLUME, J., concur.