## CUTHBERTSON, ET AL. v. UNION PACIFIC COAL COMPANY

(No. 1967; November 24, 1936; 62 Pac. (2d) 311)

442

For the employer and in support of the demurrer, there were briefs by *A. L. Taliaferro* and *T. S. Taliaferro, Jr.* of Rock Springs and *John U. Loomis* of Cheyenne and oral argument by *T. S. Taliaferro, Jr.*

For the claimants, there was a brief by *Ray E. Lee,* Attorney General; *Thos. F. Shea,* Deputy Attorney General; *William C. Snow,* Assistant Attorney General, and *Bard Ferrall,* all of Cheyenne, and oral argument by *Mr. Ferrall.*

*A. L. Taliaferro, T. S. Taliaferro, Jr.* and *John U. Loomis* in reply.

448

Blume, Justice.

This is a Workmen's Compensation case. The Union Pacific Coal Company was the employer and Andrew Cuthbertson, a coal miner, was the workman. The latter was injured on March 11, 1935, while working for the employer, and as a result of his injuries died on March 14, 1935. He was not married at the time of his death. His parents are James Cuthbertson and Ogda Cuthbertson, residents of Winton, Wyoming. They filed their amended application and claim for award in the district court of Sweetwater County, Wyoming, on June 29, 1935, alleging their relationship

to the workman as father and mother; that they were dependent members of the workman's family; that the workman was 18 years of age at the time of his death, lived with his parents and had maintained and contributed to their support. They asked compensation in the sum of $1500. On July 12, 1935, the employer filed a demurrer to the amended application, claiming that Section 124-120, as amended (subdivision 5 of subdivision D of Section 5, Chapter 100, Session Laws of Wyoming, 1935), if enforced, would be in violation of the Constitution of the United States prohibiting the taking of property without due process of law, and that the amended application does not state facts sufficient to constitute a cause of action against the employer. Upon motion of the employer, the court certified certain difficult constitutional questions to this court. The questions submitted are as follows:

"1. Is paragraph 5 (d) of Section 5, of Chapter 100, Session Laws of Wyoming, 1935, amending and reenacting Section 124-120, Wyoming Revised Statutes, 1931, as amended and reenacted by Chapter 129, Session Laws of Wyoming, 1933, unconstitutional and void, in that it purports and attempts to authorize, direct, and require compensation awards to be paid to a parent or parents surviving a workman killed in the coal mining industry when said workman leaves no widow, or widower, or boy under the age of 18 years, or girl under the age of 18 years, but leaves a parent or parents surviving said deceased workman, when said parent or parents are living in the United States, or when one of said parents is living in the United States and the other parent is a non-resident citizen of the United States and/or where one living parent is a non-resident of the United States and the other living parent is a non-resident alien because said law is in violation of Section 4, Article 10 of the Constitution of Wyoming, and Section 6, Article 1 of the Constitution of Wyoming, and Section 7, Article 1, of the Constitution of Wyoming, and the 'due process of law' clause of Article 5, amendment to the Constitution of the United States?"

"2. Is paragraph 5 (d) of Section 5, of Chapter 100, Session Laws of Wyoming, 1935, amending and reenacting Section 124-120, Wyoming Revised Statutes, 1931, as amended and reenacted by Chapter 129, Session Laws of Wyoming, 1933, unconstitutional and void in that it purports and attempts to authorize, direct, and require compensation awards to be paid to a parent or parents surviving a workman killed in the coal mining industry when said workman leaves no widow, or widower, or boy under the age of 18 years, or girl under the age of 18 years, but leaves a parent or parents surviving said deceased workman, when such parent or parents are non-resident aliens, and are dependents of the said deceased workman, in violation of Section 6, Article 1, of the Constitution of Wyoming, and Section 7, Article 1, of the Constitution of Wyoming?"

"3. Is paragraph 5 (d) of Section 5, of Chapter 100, Session Laws of Wyoming, 1935, amending and reenacting Section 124-120, Wyoming Revised Statutes, 1931, as amended and reenacted by Chapter 129, Session Laws of Wyoming, 1933, unconstitutional and void in that it purports and attempts to authorize, direct and require compensation awards to be paid to a parent or parents surviving a workman killed in the coal mining industry when said workman leaves no widow, or widower, or boy under the age of 18 years, or girl under the age of 18 years, but leaves a parent or parents surviving said deceased workman, when said parent or parents are not living in the United States, but are citizens of the United States and were dependents of the deceased workman, in violation of Section 4, Article 10, of the Constitution of Wyoming?"

"4. Is paragraph 5 (d) of Section 5 of Chapter 100, Session Laws of Wyoming, 1935, amending and reenacting Section 124-120, Wyoming Revised Statutes, 1931, as amended and reenacted by Chapter 129, Session Laws of Wyoming, 1933, 'SEVERABLE' so that it may not violate Article 10, Section 4, of the Constitution of Wyoming?"

"5. Is paragraph 5 (d) of Section 5, Chapter 100, Session Laws of Wyoming, 1935, amending and reenacting Section 124-120, Wyoming Revised Statutes,

1931, as amended and reenacted by Chapter 129, Session Laws of Wyoming, 1933, unconstitutional and void in that it purports and attempts to authorize, direct and require compensation awards to be paid to a parent or parents surviving a workman killed in the coal-mining industry, when said workman leaves no widow or widower or boy under the age of 18 years or girl under the age of 18 years, but leaves a parent or parents surviving such deceased workman, when such parent or parents are residents of Wyoming, and when such parent or parents were actually dependent upon said workman at the time of his death, because said section is in violation of Section 4, Article 10, of the Constitution of Wyoming, or of the other sections of the Constitution hereinabove referred to?"

The statute which is questioned herein is subdivision 5 of subdivision (d) of Section 124-120, Revised Statutes 1931, as amended by Section 5 of Chapter 100 of the Session Laws of 1935, and is as follows, to-wit:

"If the workman leaves no widow, or widower, or boy under the age of eighteen years, or girl under the age of eighteen years, but leaves a parent or parents surviving, such surviving parent or parents, if living in the United States, shall receive a lump sum of fifteen hundred dollars ($1500.00) ; provided, a parent or parents, who are dependents and who are non-resident aliens, shall receive a lump sum of one-third of fifteen hundred dollars ($1500.00)."

Section 4 of Article 10 of the State Constitution; mentioned in the certified questions, is, so far as material here, as follows:

"As to all extra-hazardous employments, the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classification to each person injured in such employment or to the dependent families of such as die as the result of such injuries.

The remaining constitutional provisions mentioned

in the certified questions will be referred to later in this opinion.

The fourth question certified to us relates to the severability of statutes. That is a matter of statutory construction and we cannot, accordingly, under the previous decisions of this court, pass upon that question in this case. State ex rel. Lee v. Oil Co., 48 Wyo. 152, 43 P. (2d) 686; School District No. 14 v. School District No. 21, 48 Wyo. 511, 49 P. (2d) 682; State v. Smart, 22 Wyo. 154, 136 Pac. 452; In re Gillette Daily Journal, 44 Wyo. 226, 11 P. (2d) 265; Budge v. Commissioners, 29 Wyo. 35, 208 Pac. 874.

The contentions made herein may be stated as follows. First, subdivision 5 in question here awards compensation to the parents of a deceased workman, notwithstanding that neither parent may be a dependent of the workman, as required by Section 4 of Article 10 of the Constitution of this state. Second, the subdivision above mentioned discriminates against nonresident alien parents in awarding them but one-third of the amount awarded to parents living in the United States. Third, the subdivision authorizes an award to the father of a decedent workman, though not an invalid, while the same section is a discrimination against a surviving husband of a female, who is given an award only in case that he should be an invalid. Fourth, the subdivision discriminates against dependent parents who are citizens of the United States but living in a foreign country.

1. The first contention is, as stated, that subdivision 5 in question gives an award to parents whether dependent or not, in violation of Section 4 of Article 10 of the State Constitution, which provides that the legislature shall provide by law for "the dependent family of such as die," etc. It is claimed that the word "dependent" does not precede the term "parent," and

that it cannot be read into the statute. The contention is not well taken. Counsel read the subdivision in question without reference to other statutes relating to workman's compensation, nay, even without reference to other provisions of even the same section of the statute amended at the very time when the subdivision in question was last enacted. That, of course, is wrong. It is a fundamental principle of statutory construction that, to ascertain the meaning of a given law, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as constituting one law. 59 C. J. 1043-1046. Effect must be given, if possible, to the whole statute and to every part of it. 59 C. J. 995. The first part of Section 124-120, supra, of which the subdivision in question is a part, provides that "each employe, who shall be injured * * * or the dependent family of any such injured workman who may die as the result of such injuries * * * shall receive out of the industrial accident fund, compensation in accordance with the following schedule" etc. The term "dependent families" means, as stated in the same enactment (Sec. 124-106, 107, as amended) "such members of the workman's family as were wholly or in part actually dependent upon the workman for support at the time of the injury." These provisions must be read in connection with the provisions of the subdivision in question and clearly show that only parents who are members of the workman's family and are dependent upon him for support are entitled to the compensation specified in that subdivision. Hence it is not in violation of Section 4 of Article 10 of the Constitution of this state.

It may be noted further that the provision which gives parents the right to compensation is the first part of Section 124-120 as amended and above quoted. It is the main amendment. It does not fix the amount, but it establishes the right, so far as the statutes of

this state are concerned. Subdivision 5 in question merely fixes the amount of the compensation, and is wholly subsidiary to the main enactment.

2. The next contention is that subdivision 5 in question discriminates against non-resident parents in that the award to him or them is but one-third of the amount awarded parents who live in the United States; and that this may be in violation of the treaties of the United States. Complaint is further made of the fact that the parent mentioned in the subdivision need not be an "invalid" in order to receive compensation, but that under subdivision (1) of subdivision (d) of Section 124-120, supra, the widower of an injured wife who died can receive compensation only if he is an "invalid." This is claimed to be class legislation, and that subdivision 5 in question is, accordingly, thereby rendered void.

The plaintiff in this case is not injured by the discriminations above mentioned. It is benefitted thereby. And the general rule is that no one can urge the unconstitutionality of a legislative act who is not injuriously affected thereby, or against whom the discrimination does not operate. 71 C. J. 301; 12 C. J. 768. "No constitutional right of the employer," states the court in A. F. Estabrook Co. v. Industrial Accident Commission, 177 Cal. 767, 177 Pac. 848, "is invaded by the action of the legislature in subjecting him to a less extensive liability than might have been imposed." That is the exact situation here. A number of courts have recognized an exception to this general rule, and hold that if no person belonging to the class against, or in favor of, whom the statute discriminates are in position to attack the constitutionality of the act, then one who comes under the act may do so, though no discrimination against him has been created. Quong Ham Wah Co. v. Industrial Acc. Comm., 184 Cal. 26,

192 Pac. 1021; 12 A. L. R. 1190; State v. Shady, 100 Vt. 193, 136 Atl. 26, and cases cited. This exception does not apply in connection with the discrimination above mentioned. There is no reason why the persons above mentioned, against whom the discrimination operates, may not themselves raise the question. Hence the general rule must be applied. In fact, it was specifically held in the case of Zacanelli v. Coal & Coke Co., 25 Wyo. 511, 547, 173 Pac. 981, that an employer not injuriously affected can not raise the question of discrimination against non-resident aliens. We cannot, accordingly, pass upon the constitutionality of the discriminations in question, until raised in the proper case.

3. Subdivision 5 in question makes provision for non-resident aliens, aliens resident in the United States, and citizens resident in the United States, but we find, upon close examination, that it fails to make provision for citizens of the United States who are residing in a foreign country. The subdivision is attacked as unconstitutional on that ground. It was held in the case of Quong Ham Wah Co. v. Industrial Acc. Comm., supra, that persons thus unprovided for by statute cannot come into the courts of the state and claim anything under the workman's compensation law, since the courts of the state have no jurisdiction to entertain any complaint on their behalf; that hence, employers, though benefitted by such discrimination, may attack the act as unconstitutional. The situation in the case at bar is somewhat different than the situation presented in the California case. There no provision whatever was made for one class of persons. In the case at bar, the legislature, as already mentioned, has, in the first part of Section 124-120, as amended by Section 5 of Chapter 100 of the Session Laws of 1935, provided that the "dependent family" shall re-

ceive compensation. Subdivision 5 merely fixes the amount for parents. If there are in fact citizens of the United States who are non-residents thereof within the contemplation of our statute, we have no doubt that the legislature omitted them merely by oversight, and that they did not, intentionally, as argued, make any discrimination against them. There is nothing in the act to justify the claim of intentional discrimination, even in the face of the fact that non-resident aliens are mentioned. Having been actually provided for as above mentioned, though the amount of compensation is not fixed, it may be that they could come into the courts of this state and make claim to be put on an equal basis with citizens who are resident in the United States. This point is not, however, clear, and we think that we should not decide it until a person directly affected comes before us in the proper case.

Before proceeding further, we might mention that there is some doubt in our minds as to whether or not the point of discrimination here involved is properly raised in the case. Subdivision 5 in question here is not in violation of the "due process" clause of the fifth amendment to the Constitution of the United States. That amendment has no application to state governments, but is held to be a restriction only upon the powers of the Federal government. State v. A. H. Read Co., 33 Wyo. 387, 396; 240 Pac. 208. It has not been pointed out to us how the point of discrimination arises under Section 4, Article 10, of the State Constitution. True, that section is mandatory in form. But it does not make provision against discrimination, and would seem not to be violated, at least directly, simply because the legislature fails to make provision for some persons who might be thought by counsel to come within the term "dependent family." The point of discrimination could, perhaps, be raised under Section 34 of Article 1 of the State Constitution, which

provides that "all laws of a general nature shall have a uniform operation," but that section is not mentioned in the questions certified to us. It was held in the Quong Ham Wah Co. v. Industrial Acc. Comm. case, supra, that a workman's compensation law which discriminates against citizens of other states is without legal justification and renders the statute unconstitutional. The case cites Blake v. McClung, 172 U. S. 239, 43 L. Ed. 432, 19 Sup. Ct. 165; id. 176 U. S. 59, 44 L. Ed. 371, 20 Sup. Ct. 307. In the cases so cited the laws in question were held to be in violation of Section 2 of Article 4 of the United States Constitution, providing that "the citizens of each state shall be entitled to all privileges and immunities of citizens of the several states." But that provision, too, is not mentioned in the questions certified to us. Nor is the 14th amendment of the Federal Constitution mentioned. So we have left for consideration only Section 6 of Article 1 of the State Constitution, providing that "no person shall be deprived of life, liberty or property without due process of law," and Section 7 of the same article providing that "absolute arbitrary power over the lives, liberty and property of freemen exists nowhere in the republic, not even in the largest majority." These two sections seem designed for a common end and a common purpose. But the difficulty here is the fact that no life or liberty is affected by the statute attacked in the case at bar. Is property affected? If so, it can only be by reason of property of the parents, non-resident citizens of the United States. However, their rights under the workman's compensation law would seem to be a mere expectancy, and such expectancy has been held not to be protected under the due process clause. 12 C. J. 1213; Cooley, Constitutional Limitations (8th Ed.) 749; State ex. rel. v. Industrial Comm., 125 Ohio State 341, 181 N. E. 476; Mattson v. Department, (Wash.) 29 P. (2d) 675. Hence the

query arises whether the provision that all laws must be uniform in operation is included in Sections 6 and 7 of Article 1, supra, so as to make Section 34 of Article 1, supra, superfluous. Do Sections 6 and 7 include the requirement that a statute must extend equal rights to all persons similarly situated, assuming, without deciding, that non-resident citizens do not constitute a separable class? The authorities seem to indicate that equality of rights relating to life, liberty and vested property is, to a considerable extent at least, required by the due process clause. Taylor, Due Process of Law, Section 135; Mott, Due Process of Law, Sections 99 to 112. But whether or not the clause applies to a case like that at bar, in which the rights of parents are not vested, presents another question. So the "relation between the two phrases 'due process of law' and 'equal protection of the law' as contained in the 14th amendment to the Federal Constitution has proved one of the enigmas of constitutional law." Mott, supra, Section 106. That amendment, however, as already stated, has not been called to our attention, and we need not discuss it. However, the points of doubt here raised have not been noticed by counsel for the workman, and we shall, accordingly, for the purposes of this case, but for this case only, assume that the point of discrimination here involved is properly before us. We should, however, again call attention to the fact that we should not, ordinarily, pass upon the constitutionality of an act unless the specific constitutional provision which is claimed to have been violated is pointed out. Salt Creek Transportation Co. v. Public Service Commission, 37 Wyo. 488, 493, 263 Pac. 621; Taxpayers etc. v. McPherson, (Wyo.) 54 P. (2d) 897; School Dist. No. 14 v. School Dist. No. 21, 48 Wyo. 511, 49 P. (2d) 682.

In order that a statute may be held to be discriminatory, it must be so in fact, or at least probably so. We

cannot deal in mere possibilities, or determine merely hypothetical or theoretical questions. "Not a law alone, but a law and its incidence are necessary to a justiciable right or injury." Clark v. City of Kansas City, 176 U. S. 114, 20 Sup. Ct. 284. Underlying facts may condition the constitutionality of a statute. O'Gorman & Young v. Insurance Co., 282 U. S. 251, 51 Sup. Ct. 130, 75 L. Ed. 324, 72 A. L. R. 1163; People v. Moorehead, 156 Misc. 522, 282 N. Y. S. 576. And if the court cannot take judicial notice thereof, the burden to show them lies on the party claiming the law to be in violation of the Constitution. 12 C. J. 791-793. The presumption is that it is not in violation thereof. 12 C. J. 791. One phase of that rule is to the effect that if a state of facts which would justify the legislation can reasonably be conceived to exist, the court must presume that it did exist when the law was passed. 12 C. J. 798; Shea v. Olson, (Wash.) 53 P. (2d) 615, 620; Payne v. Jones, 47 S. D. 488, 199 N. W. 476; Continental Baking Co. v. Woodring, 55 F. (2d) 347; Ex parte Lewis, 101 Fla. 624, 135 So. 147; Berg v. Berg, 220 Iowa 878, 264 N. W. 821; Crescent Cotton Oil Co. v. State of Mississippi, 257 U. S. 129, 42 Sup. Ct. 42 and cases cited.

In the case of State v. Shady, 100 Vt. 192, 136 Atl. 26, the defendant was convicted of tapping wires of a light and power company and using electric current without consent of the company, under a statute which made it a crime to so use the current from a line owned by a corporation. The defendant claimed that the law was unconstitutional because such use from a private line was not made a crime. The court, after stating the rule last above set forth, said in part:

"There is nothing in the record before us to show that, at the time this law was enacted there was a single electric light, heat, or power line in this state owned by a natural person or group of persons. There-

fore, it is the duty of this court under the rule stated to assume that there was none such, and that such lines were owned by corporations. Considering the nature of the business and the amount of capital required to carry it on, this assumption is a very reasonable one. With this assumption made, there is no classification made by the statute; everybody is included in it."

In the case of Crescent Cotton Oil Co. v. State of Mississippi, 257 U. S. 129, 42 Sup. Ct. 42, a law was attacked as discriminatory which prohibited a corporation which manufactured cotton seed oil from also operating a cotton gin. The act did not apply to individuals. It was sustained as not discriminatory on the same theory as set forth in the case of State v. Shady, supra. In Hansen v. Electric Light and Power Co., 182 Cal. 492, 188 Pac. 999, it appears that a statute provided that if a gas or electric light corporation should refuse or neglect for the period of ten days to supply the gas or electric light required, it should forfeit the sum of $50 as liquidated damages. The act did not apply to individuals, and it was assailed as discriminatory on that ground, and in violation of the Constitution providing that all laws of a general nature should have a uniform operation. The court, in refusing to so hold it, stated in part:

"No good reason occurs to us why such an obligation should be imposed on corporations engaged in the business of supplying gas or electricity, with the penalty for default, that would not be equally applicable in the case of an individual or copartnership engaged in the same business. At the same time we do not feel warranted in holding it opposed to section 11 of article 1 of our constitution. Of course, the well-settled rule is that the presumption is in favor of the validity of legislative action. And it is not to be assumed, for the purpose of nullifying the law, that there was any intention to discriminate against corporations engaged in this business to the advantage of natural persons

or copartnerships engaged therein. County of San Luis Obispo v. Murphy, 162 Cal. 588, 591, 123 Pac. 808, Ann. Cas. 1913D, 712. We think it may fairly be said that it is a matter of common knowledge that the business referred to, that of supplying a community with gas or electricity for light, etc., is in this state practically always conducted by a corporation. Isolated cases of the conduct of such business by an individual, copartnership, or voluntary unincorporated association may exist in some small communities, but certainly they are extremely rare, and, as said on a somewhat similar objection in County of San Luis Obispo v. Murphy, supra, the Legislature may have reasonably concluded that they were so inappreciable and insignificant in number that the corporations composed 'the entire class' of persons actually engaged in such business."

In the case at bar the record is barren of information as to whether or not there are any parents who are non-resident citizens of the United States, who would come under the provisions of the workman's compensation act. Counsel have sensed the importance of this point when they state in their reply brief, in substance: *"Can it be denied* that the Union Pacific Coal Company, and many other corporations of Wyoming, have in their employ men and women whose dependent parents are non-resident citizens of the United States?" But the real question is, can it be *affirmed* that such is the case? We know of no such persons. Must this court take judicial notice of the fact that there are such persons? We think not. The population of the state is small. The number of employees therein is comparatively small. It is possible that some of them have a parent, a citizen of the United States, who is living in a foreign country. But even that is not enough. The parent must also be a dependent of the workman. We cannot see how we can presume that there are such persons. The legislative act itself, by

462

failing to take them into account, would seem to indicate a likelihood that they do not exist. In any event, their non-existence may reasonably be conceived, and hence we must, under the rule above mentioned, assume that to be true. Under that assumption, no discrimination exists. Then, as stated in State v. Shady, supra, "everybody is included in it."

We cannot, accordingly, with the information now before us, hold that the section of the statute in question is unconstitutional. What we have said sufficiently answers, we think, the questions propounded to us.

KIMBALL, Ch. J., and RINER, J., concur.