SCHOOL BOARD OF JOINT DISTRICT No. 2, TOWNS OF HERMAN, etc., and others, Appellants, v. STATE SUPERINTENDENT OF PUBLIC INSTRUCTION, Respondent.

*April 29——June 4, 1963.*

For the appellants there was a brief by *Victor A. Miller* of St. Nazianz, for Lorenz, Wirth, and Conrad, and by *Gruhle, Fessler, Wissbroecker & Van De Water* of Sheboygan, for the School Board of the Town of Herman, and oral argument by *Mr. Miller*.

For the respondent the cause was argued by *Harold H. Persons,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

. A brief *amicus curiae* was filed by *Willink & Thompson* of Madison, for the Wisconsin Farm Bureau Federation, Co-operative.

BROWN, C. J. A petition was filed with the city clerk of Sheboygan by certain electors of the former Mosel school district to the municipal board of the city of Sheboygan, Wisconsin, for a detachment of that school district from the Howard's Grove school district and for an attachment of it to the Sheboygan school district. This petition failed but an appeal by these electors was made to respondent, the State Superintendent of Public Instruction (Superintendent), who then ordered the district to be detached from the Howard's Grove school district and attached to the Sheboygan school district. Appellants are two groups of

electors who oppose this order. They first appealed from the Superintendent to the circuit court for Sheboygan county. The present appeal is from a summary judgment granted by the circuit court dismissing the appeal. This appeal is from the judgment of the circuit court.

The order of the Superintendent was:

"The State Superintendent having been satisfied by information secured at the informal conference held at the County Court House of the County of Sheboygan on date of January 10, 1962, and by other information secured from statistical records on file in the office of the State superintendent that the educational welfare of the children that reside in the territory that comprised former School District No. 4, of the Town of Mosel, County of Sheboygan, State of Wisconsin, would be enhanced by an order detaching said territory from Joint School District No. 2, of the Towns of Herman, Mosel, Rhine and Sheboygan Falls, County of Sheboygan, and the Town of Meeme, County of Manitowoc, Wisconsin, and attaching said described territory to Joint City School District of the City of Sheboygan, Towns of Sheboygan and Wilson, County of Sheboygan, Wisconsin, it is hereby ordered that all of the Township of Mosel, T-16-N, R-23-E, except the W½ of the NW¼ thereof, be and the same is hereby and herewith detached from Joint School District No. 2, of the Towns of Herman, Mosel, Rhine and Sheboygan Falls, County of Sheboygan, and the Town of Meeme, County of Manitowoc, Wisconsin, and attached to Joint City School District No. 1, of the City of Sheboygan, Towns of Sheboygan and Wilson, County of Sheboygan, Wisconsin.

"This order shall become effective June 30, 1962.

"Dated this 29th day of January, 1962.

"SIGNED:        /s/ Angus B. Rothwell

"ANGUS B. ROTHWELL, STATE
"SUPERINTENDENT OF PUBLIC
"INSTRUCTION"

The Mosel school district was composed of all of the town of Mosel, Sheboygan county, except the west half of

the northwest quarter of section 30. It lay directly north. of the town of Sheboygan, which town includes the metropolitan area of the city of Sheboygan, and directly east of the town of Herman, which town includes the unincorporated village of Howard's Grove in which a high school is located. The northern boundary of the town of Mosel is the county line between Manitowoc and Sheboygan counties. The Mosel school district was a common school district operating elementary grades only.

The Sheboygan school district is also known as the Joint School District No. 1 of the city of Sheboygan, towns of Sheboygan and Wilson of Sheboygan county. This school district operates as the city of Sheboygan school system and includes the territory of the city of Sheboygan and some territories in the towns of Sheboygan and Wilson.

The Howard's Grove school district is also known as the Joint School District No. 2 of the towns of Herman, Mosel, Sheboygan Falls, and Rhine, Sheboygan county, and the town of Meeme, Manitowoc county, Wisconsin. This district is located entirely in Sheboygan county except for a small area in the town of Meeme in Manitowoc county. It is a common school district operating both elementary and high-school grades.

Certain electors of the Mosel district had previously filed a petition with the county school committee to attach such school district to the Sheboygan district. This petition was not successful.

Immediately following the failure of that petition, other Mosel district electors filed a petition with the joint county school committee of Sheboygan and Manitowoc counties to attach the Mosel district to the Howard's Grove district. This petition was successful, and on July 7, 1961, the joint school committee entered an order attaching the Mosel district to the Howard's Grove district to be effective August 15, 1961. The day after this order became effective

certain electors of the former Mosel district who were dissatisfied with being attached to the Howard's Grove district filed the present petition with the clerk of the city of Sheboygan seeking the detachment of the former Mosel district from the Howard's Grove district and the attachment of it to the Sheboygan district.

In compliance with sec. 40.06, Stats. 1961, a public hearing upon this petition was set for September 11, 1961, in the Sheboygan city hall at the chambers of the city common council. Notice in writing was duly given to all the persons and officials designated in sec. 40.025 to be notified, except that no written notice was served upon the county superintendent of schools of Manitowoc county. Notice of the public hearing was duly published in the newspaper and posted except that no notice was posted in four places in the Sheboygan district. Subsequent to the posting it appeared that a large attendance might be expected so the place of the hearing was changed to the Urban Junior High School, Sheboygan. Written notice of this change was circulated to all those who received the original notice, and notice of such change was posted in every place in which the original notice had been posted.

On September 11, 1961, at the meeting in the auditorium, all members of the common council of the city of Sheboygan were present save Councilman Paulmann. All members of the town boards of Sheboygan, Wilson, Herman, Mosel, Rhine and Sheboygan Falls and Meeme were present and participated in the hearing. The superintendent of Manitowoc county was not present. At the conclusion of the hearing, each of the municipal boards voted separately. A majority of the members of the council of the city of Sheboygan and the majority of the members of each of the town boards of the towns of Sheboygan and Wilson voted in favor of the petition. But a majority of the members of each of the town boards of the towns of Herman, Mosel, Rhine, Sheboygan Falls, and Meeme voted against it. Under

the provisions of sec. 40.06 (2), Stats., this total vote constituted a denial of the petition.

On October 3, 1961, the electors who filed the petition appealed to the Superintendent pursuant to sec. 40.06 (3) (a), Stats. The Superintendent sent notices of filing to all interested parties and notices of an informal conference to be held on January 10, 1962, relating to that appeal. The Superintendent held the informal conference during which he announced that the purpose of it was to obtain information and views to assist him in determining what would serve the educational welfare of the children residing in the territory proposed to be transferred. He also stated that his function on that appeal was to consider what would best serve the educational welfare of the students. He stated he would consider only those views and facts related to that issue before making a determination.

The Superintendent made the order above set forth on January 29th, to become effective on June 30, 1962, granting the petition and transferring the territory of the former Mosel district to the Sheboygan district. Electors from the past Mosel district who felt aggrieved by the Superintendent's order appealed to the circuit court for Sheboygan county in February, 1962, as permitted by sec. 40.06 (3) (c), Stats. Another notice of appeal was filed by the school board of the town of Herman. The Superintendent, through his counsel, the attorney general of the state of Wisconsin, filed answers to these notices of appeal. The circuit court treated the notices as one appeal.

The Superintendent filed a motion for summary judgment with accompanying affidavits, which motion was opposed by appellants with counteraffidavits. A supplemental affidavit presenting copies of documents was also filed.

After hearing counsel for both parties, and examining the record and briefs, the circuit court granted the Superintendent's motion. In a memorandum decision the circuit court

held that the Superintendent had jurisdiction over the appeal and that he did not abuse his power in issuing the order.

In the final paragraph of the order of the Superintendent dated January 29, 1962, a typographical or clerical error crept into the description of the territory transferred from the Howard's Grove district to the Sheboygan district. Instead of describing all of the town of Mosel except the W½ of the NW¼ *of section 30,* the order described it as all of the town of Mosel except the W½ of the NW¼. This error was brought to the attention of the circuit court which corrected it by a supplemental opinion.

### (1) *Substantial Issues of Fact.*

On the present appeal appellants contend that substantial issues of fact remain with respect to the jurisdiction of the proceedings by the municipal boards and the abuse of the statutory power of the Superintendent in altering the school-district boundaries.

(a) Jurisdiction.

The provisions of sec. 40.025 (1) (c), Stats. 1961, state:

". . . When the making of a reorganization order is pending before a reorganization authority or such order has been made, any other reorganization proceeding or order made by that or any other reorganization authority, after jurisdiction has been acquired as provided in par. (a) or (b) and prior to the going into effect of an order made and filed pursuant thereto, pertaining to all or any part of the territory included in the order, is void."

Appellants alleged in their affidavit in opposition to the motion for summary judgment that there were three other petitions pending affecting the same territory as the petition in question. They now contend that this affidavit created a substantial issue of fact relative to the obtaining of jurisdiction by the municipal boards.

Such other petitions filed with the city clerk of the city of Sheboygan were by the residents of the town of Centerville, and the village of Cleveland, Manitowoc county, for the purpose of attaching those areas to the Sheboygan school district. The trial court held that the words "pertaining to all or any part of the territory included in the order" in sec. 40.025 (1) (c), Stats., do not refer to the school district of the city of Sheboygan as recipient of every other area but only to the area to be detached from the Howard's Grove district and attached to the Sheboygan school district, namely the Mosel school district. We concur in this interpretation.

A reorganization order contemplated by sec. 40.025 (1) (c), Stats., which detached territory from one school district and which attached it to another includes only that territory detached and attached. Also an order which dissolves a whole school district and attaches it to another or one which consolidates all or several districts to form a new district includes only that territory dissolved and attached or that consolidated. If it were the intention of the drafters of sec. 40.025 (1) (c) to preclude subsequent petitions from being filed, which included territory in the proposed "reorganized district" or "school district affected" they would have used those terms as they are specifically defined in sec. 40.01 (11), (13). To read those terms in the light proposed by the appellants would produce a result inconsistent with the manifest intention of the legislature. Sec. 990.01 (1).

Appellants contend there is a factual issue over whether the omission of the words "section 30" in the order of the Superintendent was fatal to it so as to render it void.

The area of the Mosel district was well established and known to all. No one was trying to change its boundaries. The Superintendent's order specifically referred to the

transfer of the Mosel district. The only controversy was whether the Mosel district, with all its well-known boundaries, should be attached to Howard's Grove or to Sheboygan. The correct area of the Mosel district comprised all of the township of Mosel, T–16–N, R–23–E, except the west half of the northwest quarter of section 30 thereof. By error the Superintendent's order described the Mosel district as ". . . all of the Township of Mosel, T–16–N, R–23–E, except the W½ of the NW¼ thereof, . . ." When this error was called to the court's attention it entered an order amending the description to conform to the established fact of the area which composed the Mosel school district.

Appellants also contend that the circuit court did not have jurisdiction to correct this error by including "section 30" in the order because by so doing it would be performing a function outside of its judicial power. This contention is without merit. The appeal from the order of the superintendent was properly before the circuit court and it had jurisdiction over it. By correcting the error in the order of the superintendent the circuit court was not performing a legislative function but was performing a function well within its inherent judicial power.

We hold that as a matter of law this error by which certain territory was included in the order of the Superintendent did not render the order void. *Joint School Dist. v. Sosalla* (1958), 3 Wis. (2d) 410, 419, 88 N. W. (2d) 357. Nor was it an error beyond the court's power to correct.

Therefore, no substantial issue of fact remains with respect to whether there were any other petitions pending or whether the error in the order rendered it fatal. A trial of these questions could only result in a decision that as a matter of law that jurisdiction was obtained and was not lost.

(b) Abuse of Power by Superintendent.

The Superintendent announced at the outset of the informal conference that he would only consider those facts and that evidence that affected the educational welfare of all of the children involved, including the children of the territory to be transferred, the children of the territory remaining, and the children of the territory to which it is attached. However, by his order the Superintendent found ". . . that the educational welfare of the children that reside in the territory that comprised former School District No. 4, of the Town of Mosel . . . , would be enhanced by an order detaching said territory from Joint School District No. 2, of the Towns of Herman, Mosel, Rhine and Sheboygan Falls . . . , and attaching said described territory to Joint City School District, of the City of Sheboygan . . . ."

Appellants contend that the Superintendent established certain standards at the informal conference but did not follow them when he issued his order. They argue that the Superintendent abused his discretionary power by not being attentive to the welfare of all of the children in the entire territory affected by this order.

In *School Dist. v. Callahan* (1941), 237 Wis. 560, 567, 297 N. W. 407, we stated that:

". . . the formation of school districts and the power to exercise discretion in determining whether such districts shall be altered by consolidation or otherwise is not such an exclusive legislative function as may not be delegated to the state superintendent, as well as to town boards; and that this power may be delegated without any standard whatsoever to guide in the exercise of the power delegated."

The school districts are governmental agencies created by legislative authority to perform the public duty of educating children of the state. *State ex rel. Zilisch v. Auer* (1928), 197 Wis. 284, 293, 221 N. W. 860, 223 N. W. 123; *Iverson v. Union Free High School Dist.* (1925), 186 Wis. 342, 202 N. W. 788. Their boundaries or territorial jurisdictions may be enlarged, diminished, or abolished

in such manner and through such instrumentalities as the legislature may prescribe. This power may be delegated to the Superintendent without any standards whatsoever. *School Dist. v. Callahan, supra.* By sec. 40.06 (3) (b), Stats., the legislature has empowered the Superintendent to make such order as he deems proper under the circumstances in an appeal to him. No specific standards were provided by the legislature and the Superintendent could establish those that were within the bounds of his discretion. The standard he set forth at the beginning of the informal conference was clearly within the purpose of the statute. By issuing the order on the basis of enhancing the educational welfare of the children only in the area detached from the Howard's Grove district and attached to the city of Sheboygan district without stating whether view was had to the educational welfare of the district from which the territory was detached is not as a matter of law an abuse of his discretion. This order must be sustained unless it results in an unreasonable hardship on the area from which the Mosel school district was detached. See cases reported in Anno. 65 A. L. R. 1523, 1546, supplemented in Anno. 135 A. L. R. 1096, 1120. In the present case appellants refer us to letters exchanged by the Howard's Grove district and the Superintendent by which appellants assert that the Superintendent urged the Howard's Grove district to solicit the territory of the Mosel district and to build a school which would be large enough to educate the children in the entire area and give the district a compatible tax base.

A thorough examination of these letters reveals that they relate to the various practical problems that arise in a school district and relate to the general policy of the Superintendent with respect to school redistricting. The Superintendent made no promises to have the Mosel school district attached to the Howard's Grove district. Also, in the present case, there was no showing that the detachment

of the Mosel district from the Howard's Grove district resulted in an unreasonable hardship to the latter. A mere change in the tax status of the area from which a former district was detached cannot under the circumstances in this case be considered sufficient to preclude the Superintendent from altering the school-district boundaries.

Related to the issue of legislative standards is the question raised by the appellants whether a trial is necessary to determine if the Superintendent followed the standards as set forth by the legislature for determining the master plan of school-district reorganization. In 1947, as an aid to reorganization, the legislature created for the first time the statutory provisions comparable to the present provisions in secs. 40.01 and 40.03, Stats., known as the "County School Committee Law," Laws of 1947, ch. 573, sec. 9. Prior to this act the only statutory procedure for the reorganization was that provided in what was then sec. 40.03 which was comparable to those in the present sec. 40.06, known as the "Municipal Boards' Law."

The county school committee was created on a voluntary basis in 1947 and the filing of a master plan by each school committee as to future school-district reorganization was voluntary. In 1949 an additional procedure was adopted to facilitate reorganization. Laws of 1949, ch. 501, secs. 3, 4, and 5. As a part of this plan the county school committees were required to file a master plan and the legislature by sec. 40.303 (4) (a), Stats. 1949, provided the standard for determining a master plan. It was "based upon reliable data on census, enrollment, location, financial status, geography and the general needs of each community of the county." Laws of 1949, ch. 501, sec. 4. However, these provisions in the statute relating to the standards of the master plan were repealed in 1953. Laws of 1953, ch. 90, sec. 23.

The master plans were necessarily of a tentative nature. The plan of the Sheboygan county school committee is not part of the record but, in any event, the Superintendent was

not compelled to follow it in making his determination nor was he bound to employ the standard of the master plan, which had been previously repealed by the legislature, in making his order.

## (2) *Issues of Law.*

(a) Jurisdiction.

Jurisdiction of a reorganization authority to make orders of a school-district reorganization is lost:

"40.025 (1) (d) 1 Upon failure of the reorganization authority to substantially comply with the procedural steps required by law to be taken by it prior to the issuance and filing of an order of school district reorganization."

Sec. 40.025 (2) (a) and (b), Stats., provides as follows:

"*Notice of public hearings on reorganization of school districts.* (a) All publication, posting and service of notice of a public hearing on a proposed reorganization required by s. 40.03 shall be made by the secretary of the county school committee or the secretary of the joint county school committee at least 10 days before the date of hearing. Such notice shall be in writing, shall state the hour, day and place of such hearing, and shall be served upon the clerk of each school district affected by the proposed reorganization. Pursuant to s. 40.01 (14) the secretary shall also serve notice upon the clerk of each town, village or city affected by the proposed reorganization and upon the county superintendent of schools of any county (other than that of the secretary) in which any school district affected by the reorganization lies. Such service may be either by personal service or by registered mail with return receipt requested. The secretary shall also mail a copy of such notice to every other member of the board of each school district, town and village and the council of each city, affected by the proposed reorganization. The secretary shall also post notice of such hearing in 4 or more public places in each school district affected and shall cause notice thereof to be published once in at least one newspaper which has general circulation in the school districts affected by the proposed reorganization,

all not less than 10 days before the date of such hearing. When all other requirements of notice have been complied with, the presence of an official at a hearing waives the required service upon or mailing to him of notice thereof.

"(b) Notice required by s. 40.06 shall be made by the town, village or city clerk who is designated therein to give such notice. Publication and posting shall be made and notice shall be served or mailed as provided in par. (a) with the words 'town clerk', 'village clerk' or 'city clerk' substituted for 'secretary of the county school committee' in each instance. The waiver provision set forth in par. (a) shall also apply."

"40.025 GENERAL PROVISIONS RELATING TO REORGANIZATION. (1) *Jurisdiction; acquisition, continuance and loss thereof.* (a) Jurisdiction of a reorganization authority, other than the state superintendent, to make orders of school district reorganization under s. 40.03, 40.06, 40.07, 40.12, 40.14, 40.15 or 40.807 is acquired upon the filing of a petition or the giving of notice of a public hearing when a reorganization authority acts upon a resolution adopted upon its own motion.

"(b) Jurisdiction of the state superintendent to act under any provision of this chapter on a school district reorganization is acquired upon the filing with him of a notice of appeal or other documentary material upon which any provision of this chapter authorizes him to so act.

"(c) Jurisdiction, when acquired as prescribed in pars. (a) and (b), continues until the reorganization authority disposes of the matter before it, unless lost as provided in par. (d). When the making of a reorganization order is pending before a reorganization authority or such order has been made, any other reorganization proceeding or order made by that or any other reorganization authority, after jurisdiction has been acquired as provided in par. (a) or (b) and prior to the going into effect of an order made and filed pursuant thereto, pertaining to all or any part of the territory included in the order, is void.

"(d) Jurisdiction acquired pursuant to par. (a) is lost:

"1. Upon failure of the reorganization authority to substantially comply with the procedural steps required by law

to be taken by it prior to the issuance and filing of an order of school district reorganization."

Appellants submit that the reorganization authority failed to substantially comply with the procedural steps required by the above statute. Steps to be so substantially performed are given in sec. 40.06, Stats., when, as here, the reorganization procedure is that chosen by the petitioning electors.

"40.06 REORGANIZATION OF SCHOOL DISTRICTS. (1) *Power; public hearing.* Upon the filing of a petition by an elector residing in a school district affected with the clerk of a town, village or city affected or upon adoption of a resolution upon its own motion, the board of any town or village affected or the council of any city of the second, third or fourth class affected may, by order, reorganize school districts. Before any reorganization order is made a public hearing shall be held on the proposal. The clerk of the town, village or city with whom a petition is filed or the clerk of the town, village or city the governing body of which adopts a resolution proposing a school district reorganization, shall fix a date for a public hearing within 30 days of the date of filing the petition or of the date of the adoption of the resolution and give notice thereof as provided in s. 40.025 (2).

"(2) *Joint actions of boards.* When a petition is filed or a resolution is adopted for the reorganization of a school district, as provided in sub. (1), and any territory of the proposed reorganized district comprises all or part of a school district affected by such reorganization which lies in more than one town, village or city, the boards of all such towns and villages and the councils of all such cities in which any territory of any school district affected lies shall act jointly thereof; the concurrence of a majority of each board or council is necessary to a valid order. The meeting of the several boards and councils to conduct a public hearing shall be called by the clerk of the town, village or city with whom the petition is filed or whose board or council adopted the resolution for a proposed reorganized district and said clerk shall give notice thereof as provided in s. 40.025 (2) (b).

"(3) *Appeal.* (a) Any person aggrieved by an order made under this section may appeal to the state superintendent within 30 days following the date of mailing of such order as provided in s. 40.025 (5). If action adverse to the making of an order of reorganization is taken by town or village boards or city councils, whether acting alone or jointly, at or following a hearing upon a petition for such reorganization, any person aggrieved by such adverse action may appeal to the state superintendent within 30 days following the date of such action. If no order of reorganization is filed within 60 days after the filing of a petition therefor any person aggrieved may appeal to the state superintendent within 90 days after the filing of the petition and such appeal may be taken notwithstanding any other provision for appeal in this paragraph. No appeal hereunder to the state superintendent may be withdrawn.

"(b) After determining the appeal the state superintendent shall make an order affirming, modifying or reversing the order appealed from, or if the appeal is taken when no reorganization has been ordered the state superintendent may make such orders as he deems proper under the circumstances. The state superintendent shall make his order within 120 days of the date of taking of an appeal and forthwith file a copy thereof as provided in s. 40.025 (5). Failure of the state superintendent to make an order on appeal within said 120 days shall operate as a denial of the appeal.

"(c) Any person aggrieved by any order of the state superintendent issued under this section may appeal therefrom to the circuit court of any county in which any territory of the reorganized district lies. A written notice of appeal stating specifically the grounds upon which said appeal is based shall be served on the state superintendent and filed with the clerk of the court all within 30 days from the date certified copies of his order are mailed as provided in s. 40.025 (5). Such service and filing thereof shall constitute perfection of the appeal."

There was proper publication, posting, and service of notice in the present case, with the exception of three instances: (1) Written notice was not served upon the coun-

ty superintendent of schools of Manitowoc county; (2) notice was not posted in four places in the Sheboygan school districts; (3) notice of the change of location of the hearing was published, circulated, and posted, but not within ten days prior to the hearing. These are the deficiencies upon which appellants rely as being a substantial noncompliance.

Despite these defects in giving statutory notice, the public hearing was held at the changed location and all the individuals entitled to personal notice attended and participated save a council member of the city of Sheboygan and the superintendent of Manitowoc county.

We deplore these statutory notice defects. They should not occur; however, only substantial and not strict compliance with the statutory requirements was necessary in order for the municipal boards to retain jurisdiction. Sec. 40.025 (1) (d) 1, Stats. The failure to comply with the statute in giving notice to the superintendent of Manitowoc county was unintentional, as were the other notice defects. These failures probably caused the absence of two officials from the hearing but their absence was not prejudicial to the cause of the appellants for they prevailed at the hearing by obtaining a rejection of the petition. In view of these circumstances to hold that jurisdiction was lost would be to sacrifice substance for form. In our opinion the statute was substantially complied with, and the municipal boards did not lose jurisdiction.

(b) Abuse of Power.

The Superintendent is required by sec. 39.02 (7), Stats.:

*"Appeals.* [To] Examine and determine all appeals, which by law may be made to him, and prescribe rules of practice in respect thereto not inconsistent with law."

He is also directed by secs. 39.02 (22) and 40.055, Stats., to consult and advise the several county school com-

mittees. Appellants contend that the Superintendent abused his power by not consulting with the county school committees prior to the making of the order.

These legislative directions are general in nature and do not specifically command the Superintendent to consult and advise county committees on an appeal to him.

Appellants contend that the Superintendent abused his discretion on the appeal because he in effect approved a petition that had failed at the municipal-board level. They assert that to allow the Superintendent to overrule the municipal boards is to cause a conflict between the two alternate methods of reorganizing school districts, one by the county school committee, sec. 40.03, and the other by the municipal-board action in sec. 40.06.

The alternate methods of reorganizing school districts and an appeal to the Superintendent who has the power to change the order of the former are not in conflict. In its early history we recognize that this statutory system of hearing an appeal contemplated that the order of the committees or boards was subject to review by the Superintendent. We stated in *State ex rel. Moreland v. Whitford* (1882), 54 Wis. 150, 156, 11 N. W. 424:

"It is a *duty* imposed upon the town board, and then, on appeal, on the state superintendent, to alter school districts; and the substantial effect of the whole matter is, that town boards may alter school districts only with the approval of the state superintendent, if any party aggrieved appeal to him."

(3) *Judicial Determination of Legislative Policy.*

The law is well established that an appeal to the courts under sec. 40.06 (3), Stats., is only for the determination of whether the reorganization authorities acted with jurisdiction or whether they acted within their discretionary powers. The boundaries of school districts are traditionally a question of policy rather than of law or fact. *School Dist.*

*v. Callahan, supra; Zawerschnik v. Joint County School Comm.* (1955), 271 Wis. 416, 73 N. W. (2d) 566.

An *amicus curiae* brief was filed on behalf of appellants urging us to part from prior decisions and to attempt a new judicial attitude by allowing the wisdom of the policy of school redistricting by the statutory authorities to be reviewed in the courts. It claims that the Superintendent has too much power under the present legal framework of statutory grants and judicial interpretation. The brief refers us to the recent cases of *Gomillion v. Lightfoot* (1960), 364 U. S. 339, 81 Sup. Ct. 125, 5 L. Ed. (2d) 110, and *Baker v. Carr* (1962), 369 U. S. 186, 82 Sup. Ct. 691, 7 L. Ed. (2d) 663, in which the United States supreme court undertook the task of reviewing reapportionment, traditionally a legislative function.

The courts could not assume the duties of the Superintendent or any other statutory authority even if the legislature delegated to them the power, for such a delegation would violate the doctrine of separation of powers. *Callahan Case, supra,* page 578. In the *Gomillion* and the *Baker Cases* the United States supreme court held that the rights of the citizens as defined by the federal constitution were being denied them by the legislature. However, the alteration of school districts as the legislature prescribes does not deprive any person of his property or deny him equal protection of the laws or due process of the laws. *Zawerschnik v. Joint County School Comm., supra,* page 427; *Callahan Case, supra,* page 568. A proposal to change the present system by limiting the power of the Superintendent and by providing for a standard of determination can only be addressed to the legislature.

In summation, there were no substantial issues of fact presented by an examination of the affidavits and supporting documents. The only issues arising in the present motion for summary judgment were those of law and which

must be resolved in favor of respondent. The doctrine of the separation of powers prevents us from reviewing the policy of school redistricting, and no constitutional violations under the present system were shown to have occurred.

Therefore, the granting of the motion for summary judgment was proper and the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.