Tom W. POWERS, E. H. Krumm, George Cole, and Charles W. Lordier, Appellants (Plaintiffs below),

v.

The CITY OF CHEYENNE, a municipal corporation, Herbert Kingham, as Mayor, and George Dubois and Floyd Holland as Commissioners of the City of Cheyenne, Appellees (Defendants below).

No. 3665.

Supreme Court of Wyoming.

Dec. 19, 1967.

Thomas O. Miller, Ellen Crowley, Cheyenne, for appellants.

Arthur Kline and James A. Tilker, Cheyenne, for appellees.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

In order to have a new oil refinery built in the vicinity of Cheyenne at a total cost of $75,000,000, including financing costs, the City of Cheyenne proposes to acquire and finance the venture from funds received through the sale of revenue bonds issued under authority of Ch. 112, §§ 92 to 100, S.L. of Wyoming 1965 (Industrial Development Projects Act), as amended by Ch. 95, S.L. of Wyoming 1967—such facility to then be leased to Husky Oil Company for operation.

The plaintiffs, who are residents, electors, property owners and taxpayers in the City of Cheyenne, brought an action in the district court of Laramie County questioning the validity of the Industrial Development Projects Act as amended and the proposed agreement between Cheyenne and Husky, with prayer for an injunction against consummation of the project. The district court found the proposed project valid and legal in all respects and denied relief. From its judgment plaintiffs have appealed.

Appellants have listed and argued to us twelve assignments which need to be considered in passing upon the judgment appealed from. We propose to limit our decision to the questions raised and will dis-

cuss each assignment in the order in which argument has been made.

### 1. *Payments In Lieu of Taxes*

and

### 2. *Should Projects Be Tax-exempt?*

Article 1, § 28, Wyo.Const., provides all taxation shall be equal and uniform; and Art. 15, § 11, provides all property, except as in the constitution otherwise provided, shall be uniformly assessed for taxation. Chapter 95, § 5(b), S.L. of Wyoming 1967, provides in pertinent part:

"Projects initiated after the effective date of this act shall be exempt from ad valorem taxes, but the governing body shall negotiate annually with the proposed lessee and provide for an annual charge or fee, in lieu of such taxes, which shall fully compensate the State of Wyoming, the political subdivisions and other recipients of such ad valorem taxes for the respective distributive shares thereof which each would have received had this exemption not been authorized. * * *"

Appellants contend, in assignment 1, the 1967 amendment for payments in lieu of taxation is unconstitutional and void because it would result in a form of taxation which would not be equal and uniform.

Article 15, § 12, Wyo.Const., specifies that certain properties shall be exempt from taxation, and then these words are added: "and such other property as the legislature may by general law provide." Appellants have failed to mention this provision in connection with their contention that the 1967 amendment is unconstitutional.

However, in their second assignment, appellants argue it is unconstitutional for project property to be taxed at all because Art. 15, § 12, exempts from taxation the property of cities "when used primarily for a governmental purpose."

This causes us to wonder whether the parties who have brought this action would be adversely affected regardless of whether § 5(b) of the 1967 amendment is declared unconstitutional. If the amendment were declared unconstitutional, then the pre-existing statute, Ch. 112, § 99, S.L. of Wyoming 1965, would remain in force and cause the property to be taxable. On the other hand, if we were to hold the amendment constitutional, then that language in § 5(b) would be applicable and require that parties shall negotiate for an annual charge, in lieu of the forgiven taxes, which charge shall fully compensate the State of Wyoming, the political subdivisions and other recipients of ad valorem taxes for the respective distributive shares thereof which each would have received had the exemption not been authorized.

The city states in its brief that it makes no difference whatever, as far as the validity of the financing here in question is concerned, whether the 1967 amendments to § 99 are constitutional or not. Section 5.3(b) of the lease agreement between Husky and the city makes it incumbent upon the lessee to pay annually, in lieu of ad valorem taxes, an amount which shall fully compensate the state and political subdivisions to the extent of the distributive shares each would have otherwise received had the lessee been the owner of the project during the period for which such payment is made.

The contract then continues with a stipulation that the city shall cause the project property to be valued and assessed each year by the county assessor or other official charged with the responsibility of assessing privately owned property for ad valorem tax purposes; shall cause to be applied to the taxable value of the property the tax rate or rates which would be applicable for state and local ad valorem tax purposes if the property were then privately owned; and shall cause the county treasurer or other official charged with the responsibility of collecting ad valorem taxes to submit annually to lessee, when other tax notices are submitted, a statement of the ad valorem taxes which would

otherwise then be chargeable. It is agreed the amount shown on each such statement shall be paid.

If it makes any difference to the plaintiffs or other taxpayers whether Husky pays taxes or pays a charge equivalent to taxes, appellants have failed to show us what that difference is. In consequence, we need not decide whether their contention in assignment 1 or their contention in assignment 2 is correct. The two contentions are in direct conflict and both cannot be right. Moreover, appellants have not shown themselves to be adversely affected either way, i. e., whether Husky pays taxes under the pre-existing statute or equivalent charges in lieu of taxes under the amendment.

■ Persons who are not adversely affected by alleged unconstitutionality of a provision in a statute are not entitled to complain of the unconstitutionality of the statute. Miller v. Board of County Commissioners of the County of Natrona, 79 Wyo. 502, 337 P.2d 262, 270.

The general rule on this matter, which has been consistently followed in our state, is that constitutionality of a statute may not be attacked by one whose rights are not, or are not about to be, adversely affected by operation of the statute. Walgreen Co. v. St. Bd. of Equalization, 70 Wyo. 193, 246 P.2d 767, 769. See also In re Edelman's Estate, 68 Wyo. 30, 228 P.2d 408, 415; Thomas v. Jultak, 68 Wyo. 198, 231 P.2d 974, 980; Campbell v. Wyoming Dev. Co., 55 Wyo. 347, 100 P.2d 124, 140, rehearing denied 102 P.2d 745; and Cuthbertson v. Union Pacific Coal Co., 50 Wyo. 441, 62 P.2d 311, 315.

■ In the absence of a showing that plaintiffs or any parties similarly situated are going to be adversely affected either by compliance with Ch. 95, § 5(b), S.L. of Wyoming 1967, or by compliance with Ch. 112, § 99, S.L. of Wyoming 1965, we must uphold the action of the district court in declining to enjoin the Husky project on the grounds asserted by plaintiffs in con-nection with the taxability of the proposed Husky project.

### 3. Public Purpose

Appellants contend the Husky project would be in violation of Art. 13, § 3, Wyo. Const., in that it is not for a public purpose as required by § 3. The pertinent language contained in Art. 13, § 3, is:

"* * * no tax or assessment shall be levied or collected or debts contracted by municipal corporations except in pursuance of law for public purposes specified by law."

■■ It is very apparent that the purpose of this constitutional provision is to protect taxpayers such as plaintiffs from being called upon to pay for activities which do not serve a public purpose. With respect to industrial development projects, however, the act of the legislature, the city ordinances, the revenue bonds themselves, and instruments pertaining to the project all spell out very clearly that the city or county does not incur a pecuniary liability or a charge upon its general credit or against its taxing power, and that the bonds do not constitute a general obligation of the city or county.

This being so, the purpose back of Art. 13, § 3, is not present and there is no occasion to invoke its protection on behalf of property owners and taxpayers. Once again then, we can apply the rule relied on in connection with assignments 1 and 2, which is that constitutionality of a statute may not be attacked by one whose rights are not, or are not about to be, adversely affected by operation of the statute.

We must keep in mind that plaintiffs first of all had the burden in district court to show they are adversely affected by operation of the act in question, before they can attack the Husky project on the ground that it violates constitutional provisions. We find nothing in the record or in appellants' arguments which indicates or suggests that plaintiffs are adversely affected by any of the operations contemplated un-

der the Industrial Development Projects Act.

Insofar as a violation of Art. 13, § 3, is concerned, even if plaintiffs had shown they are or will be adversely affected, it still would have been necessary for them to prove in district court, before being entitled to the injunction sought, that the Husky project is not "in pursuance of law for public purposes specified by law."

According to the record before us, plaintiffs wholly failed to meet this burden of proof. They called as an adverse witness Glenn E. Nielson, chief executive officer of Husky, and no other witness. Nielson's testimony was certainly affirmative on the matter of a public interest, and we find nothing in any of the testimony or numerous exhibits introduced in evidence which tends to show the absence of a public purpose.

Also, on its face, the project is in pursuance of law (the Industrial Development Projects Act as amended) ; and it is for a public purpose specified by law in the sense that Ch. 95, § 1(b), specifies that plants and facilities of industrial development projects are declared to be and constitute public purposes.

In Uhls v. State, Wyo., 429 P.2d 74, 90, Justices Gray and Parker pointed out that there was insufficient basis to hold the questioned legislation to be unconstitutional as it might conceivably apply to permissible, factual situations. On the negative approach that an act of the legislature will not be declared unconstitutional unless its unconstitutionality clearly appears, they said they did not challenge the answers given in that case to reserved questions.

We think the same reasoning applies in the appeal now being dealt with. On the negative approach that plaintiffs have not shown themselves to be adversely affected; have failed to show that a sufficient public purpose is not present; and have not clearly shown the act and ordinances in question to be violative of Art. 13, § 3, we affirm the findings and judgment of the district court with respect to Art. 13, § 3.

### 4. *Investment of Funds*

Appellants complain that the trustee for project funds intends to invest moneys on deposit in the Construction Fund in certificates of deposit issued by commercial banks, trust companies, or national banking associations which are members of the Federal Reserve System. They say this is wrong because Ch. 130, S.L. of Wyoming 1967, provides "it shall be lawful" for a city treasurer to invest his funds and the moneys in his custody or possession, eligible for investment, in certain securities the list of which does not include certificates of deposit in such banking institutions as those complained against.

We cannot assume that either the city treasurer or the trustee is going to do an unlawful act, and there is nothing in the record of this case to indicate either has done or threatens to do an unlawful act.

Section 4.9 of the lease agreement between the city and Husky states, "if then permitted by law," the trustee may invest moneys on deposit in the Construction Fund in certificates of deposit issued by such banking institutions as those which plaintiffs claim are not lawful depositories. To say that the trustee is permitted to make an investment of the kind questioned, if then permitted by law, is not to say he threatens to make or will make the questioned investment if not then permitted by law.

Moreover, the trustee takes his powers under those special statutes pertaining to industrial development projects and under the agreement between the city and Husky. We know of no reason for saying his investment of moneys on deposit in the Construction Fund is controlled by the statute which makes it lawful for the city treasurer to make certain investments.

As far as the city treasurer is concerned, he has no responsibility for the care and custody of project funds after such funds are deposited with the trustee for application, investment and disbursement in

accordance with the provisions of the Industrial Development Projects Act and the agreements of the parties. Therefore, the city treasurer will not have construction funds or moneys in his custody or possession which are "eligible for investment"; and Ch. 130, S.L. of Wyoming 1967, will have no application.

### 5. *Delegation of Authority*

■ The constitutionality of the act, ordinances and party agreements here involved are challenged on the ground that they cause an unlawful delegation of authority in contravention of Art. 3, § 37, Wyo.Const.

We dealt with this identical question in the *Uhls* case, at 429 P.2d 84–85, and held there was no unlawful delegation of authority. What was said there is applicable here, and we need not repeat the discussion. Our holding is still the same.

Appellants say the facts in the instant case take it out of the *Uhls* case, but the only thing pointed to as a distinguishing factor is the fact that Ch. 95, § 5(b), S.L. of Wyoming 1967, purports to amend the Industrial Development Projects Act by providing for the negotiation of payments in lieu of taxes. The granting of power to "negotiate" payments in lieu of taxes is said to be an unlawful delegation of authority.

If § 5(b) is adhered to and the parties negotiate payments in lieu of taxes, the negotiation could not possibly amount to the performance of a municipal function. The assessment of property and the fixing of levy rates are governmental in nature, but they are not functions to be performed by representatives of Husky. By contract and by the provisions of § 5(b), payments in lieu of taxes would have to be the equivalent of taxes. Anything done by Husky or its representatives, if payments in lieu of taxes are negotiated, would be nongovernmental and the performance of a private rather than a public function. Thus, the answer given in *Uhls* is sufficient, and the findings and judgment of the district court with respect to Art. 3, § 37, should stand.

### 6. *Depositories For Money*

■ There is no merit to the contention made by appellants under assignment 6, which is that all project funds must be deposited in banks incorporated under the laws of the State of Wyoming. Article 15, § 7, Wyo.Const., is relied on for this contention. It specifies that all money belonging to any city shall, whenever practicable, be deposited in "a national bank or banks or in a bank or banks incorporated under the laws of this state."

Authorization is expressly granted for deposits in a national bank or banks regardless of whether incorporated under the laws of Wyoming. As a matter of fact, national banks are not ever incorporated under the laws of this state. The fact that the constitutional grant of authority is extended to other banks besides national banks, if such other banks are incorporated in Wyoming, does not detract from the grant to national banks which are incorporated under the laws of the United States.

### 7. *Publication of Ordinances*

■ This assignment has to do with appellants' claim that the publication of the city's proposed ordinances was not legally sufficient because the publication did not include the exhibits annexed to the ordinances.

Section 15.1–16, W.S.1957 (Compiled 1965) requires every ordinance to be published at least once in a newspaper of general circulation within the city, before becoming effective. The ordinances in question were published, but exhibits annexed thereto were not published. We realize an exhibit referred to in an ordinance can be such an essential part of the ordinance that failure to publish it with the ordinance could invalidate the ordinance. However, we do not think the exhibits involved here are in that category.

Our reasons for so holding are stated in the *Uhls* case at 429 P.2d 89–90. What was said there is equally applicable here.

*Questions Previously Answered*

In this appeal, appellants have raised three questions which were dealt with and sufficiently answered in Uhls v. State, Wyo., 429 P.2d 74. Nothing is suggested in connection with any of these questions which would distinguish the present case from the *Uhls* case. We deem our answers there sufficient to cover the same questions raised in this case. The questions referred to are as follows:

■ 8. Does Art. 16, § 6, Wyo.Const., make it unconstitutional and illegal for Cheyenne to grant to Husky an option to renew its lease or to purchase the project property for the amount required to pay the bonds in full, all costs and expenses incident thereto, and an additional nominal sum? This question is fully answered in *Uhls*, at 429 P.2d 84.

■ 9. Does either § 4 or § 5 of Art. 16, Wyo.Const., pertaining to debt limitations make consummation of the Husky project unconstitutional on the ground that the debt limitations prescribed in these sections will be exceeded? This question is fully discussed in *Uhls*, at 429 P.2d 87.

■ 10. Is the Industrial Development Projects Act unconstitutional by reason of the fact that the title of Ch. 112, S.L. of Wyoming 1965, is not sufficient to embrace the subject of industrial development projects, as required by Art. 3, § 24, Wyo. Const.? This question is fully answered in *Uhls*, at 429 P.2d 89.

### 11. *Endorsement on And Registration of Bonds*

■ Appellants advance the argument that the Industrial Development Projects Act, the city ordinances and related documents fail to provide for endorsements on and registration of bonds as required by Ch. 112, §§ 414 and 415, S.L. of Wyoming 1965.

In Reed v. City of Cheyenne, Wyo., 429 P.2d 69, 73, we discussed a similar argument, which was to the effect that Art. 16, § 8, Wyo.Const., required bonds to have endorsed thereon a certificate stating that the bond or evidence of debt is issued pursuant to law and is within the debt limit. We held it to be clear that this constitutional provision has reference only to obligation bonds or other evidence of debt where a debt is created.

Section 414 is merely the statutory implementation of Art. 16, § 8, and the ruling in the *Reed* case will necessarily apply as far as the contention with respect to § 414 is concerned.

Section 415 requires the city treasurer to register all bonds issued in a book kept by him. This section follows § 414 and is lodged in the midst of statutory provisions governing the issuance of general obligation bonds by municipalities. It is therefore also clear that § 415 applies only to general obligation bonds and not to industrial development revenue bonds.

### 12. *Bills Against City*

■ The last of appellants' assignments is that the act, ordinances and related documents purport to authorize the payment of bills or claims against the City of Cheyenne without compliance with the provisions of Art. 16, § 7, Wyo.Const., which states:

"* * * no bills, claims, accounts or demands against the state, or any county or political sub-division, shall be audited, allowed or paid until a full itemized statement in writing, verified by affidavit, shall be filed with the officer or officers whose duty it may be to audit the same."

We think we have made it clear by frequent repetition in the *Uhls* case, in the *Reed* case and in other parts of this opinion that nothing which can be characterized as "bills" or "claims" against the City of Cheyenne can arise in connection with the issuance of revenue bonds as proposed in these cases. The assignment and contention in this regard is without merit.

### Summary

It will be seen from our review of all assignments of error urged by the appellants

that we find no reason to reverse or change the findings and judgment of the district court. Such judgment is therefore affirmed.

Affirmed.

Mr. Justice PARKER concurs in the result.