·Daniel **JOHNSON** et al., Appellants,

v.

**Robert SCHRADER, State Superintendent of
Public Instruction, et al., Appellees.**

No. 4084.

Supreme Court of Wyoming.

March 7, 1973.

John J. Rooney, of Rooney & Horiskey, Cheyenne, for appellants.

Jerome F. Statkus, Sp. Asst. Atty. Gen., Cheyenne, for appellees.

Before PARKER, C. J., and McEWAN, GUTHRIE and McINTYRE, JJ.

## ON REHEARING

Mr. Justice GUTHRIE delivered the opinion of the court.

A rehearing was granted in the above matter after our earlier decision appearing in 502 P.2d 371. The application for rehearing was based upon two grounds, which are as follows:

":* * * That the Court made an erroneous conclusion and may have overlooked specific information in the Record in holding that, 'We fail to find anything in the Record which would justify a conclusion that Plan 3 would not have reasonably met all of the criteria requirements set forth in Section 21.1–109.' * * *

" * * * That the Court made an erroneous conclusion in remanding the matter to the District Court: 'In light of what we have said, it becomes apparent this case must be remanded to the district court for the taking of evidence and a determination of whether Plan 3 of the county committee reasonably met the statutory criteria requirements.' * * * "

After argument on rehearing wherein our attention was directed at portions of the record not heretofore mentioned and a careful reexamination of the rather confusing and voluminous record, this writer confesses a misapprehension of the record at the time of the preceding opinion. We affirm and reassert all that portion of the earlier opinion through the first full paragraph on page 375. It is now our view that the decision in that case was not consonant with the entire record and must be modified to conform thereto.

No factual statement will be included herein except when it appears necessary to make clear the reasons for this disposal.

■ One of the principal thrusts of appellants in attacking the reorganization plan approved by the state committee was that the so-called Plan 3 should have been approved and that in rejecting it the state committee acted arbitrarily and in excess of its powers because the resubmitted plan included the changes recommended when the state committee rejected the first plan. As pointed out in the earlier decision, if Plan 3 did not meet the statutory criteria then its rejection was justified, and if it did comply with the statutory requirement the state committee should be ordered to approve it. The matter was then remanded to the district court for this determination. Our reexamination of the record discloses that from the evidence and information available to the state committee it is readily determinable there was substantial evidence upon which a decision could be based that Plan 3 did not comply with the criterion as set out in § 21.1–109(e), W.S. 1957, 1971 Cum.Supp.

The record discloses that had Plan 3 been approved the following would have been true as to the assessed valuation per pupil:

|  | Number of Pupils | Assessed Valuation Per Pupil |
| --- | --- | --- |
| Torrington No. 1 | 2,058 | 7,827 |
| Goshen Hole No. 5 | 255 | 17,627 |
| LaGrange No. 8 | 145 | 17,062 |
| Lingle No. 12 | 443 | 14,093 |

No amount of evidence which might be received by the district court can or will al-

ter these figures nor can argument dissipate the obvious disparity. Not only do they demonstrate a great disparity per pupil, they also clearly demonstrate that well over one-half (approximately 70 percent) of the pupils in Goshen County would be the victims of this disparity and retained in the district with the lowest valuation. The state committee was justified in its position that the plan did not effectuate the command for "a ratio of average daily membership to assessed valuation as nearly equalized as practicable."

In addition thereto the following statement appears in Plan 3 as submitted:

"The Committee has carefully considered the ratio of A.D.M. to assessed valuation in developing their plan of organization. *It is realized that this ratio is not equalized and proper consideration was given to this factor in preparing the four-district plan.* On considering the present location of the school population, ecology, utilization of existing facilities, length of time and difficulty involved in busing requirements, the proposed plan is best suited to fill the educational needs of Goshen County children." (Emphasis supplied.)

This admission of noncompliance cannot be justified by the explanation included nor does it alter the mandatory character of this statutory criterion. Section 21.1–109 provides:

"All districts organized after the effective date of this act shall conform to the following criteria * * *"

Section 21.1–106 states that one of the purposes of the act is to:

" * * * provide a wiser and more efficient use of public funds for education

by making it possible to reduce the disparity in per pupil valuation among school districts. * * *."

In addition to the statutory requirements, the importance of this criterion and its indicated mandatory character have been earlier recognized by this court when it was suggested the problem of unequal assessed valuation may necessarily become the subject of statewide action, Sweetwater County Planning Committee for Organization of School Districts v. Hinkle, Wyo., 491 P.2d 1234, 1238; 493 P.2d 1050.

We cannot ignore the fact that in several states in recent years it has been held that students are denied equal protection in the event the disparity of valuation becomes too great.[1] This is persuasive of the necessity that such criterion must be considered mandatory under the terms of our statute and emphasizes the importance thereof when such disparity can be a denial of "equal protection."

The state committee then properly rejected Plan 3 for failure to comply with this criterion, and it follows that under the terms of the remand in the original opinion there would be nothing for the district court to determine in this area. The record contains substantial credible evidence upon which the state committee could make this determination, which should not be disturbed.

Because we make this resolution of this matter it becomes necessary to consider such other issues raised as are necessary and material to the disposal of this matter.

Appellants strongly contend that they were denied a hearing and had no proper hearing on this plan, or as they phrase it, "appellants had never had a day in court to

---

1. Serrano v. Priest, 5 Cal.3d 584, 96 Cal. Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187; Robinson v. Cahill, 118 N.J.Super. 223, 287 A.2d 187; 119 N.J.Super. 40, 289 A.2d 569; Van Dusartz v. Hatfield, D.C.Minn., 334 F.Supp. 870; Rodriguez v. San Antonio Independent School District, D.C.Tex., 337 F.Supp. 280, dismissed 406 U.S. 965, 92 S.Ct. 2414, 32 L.Ed.2d 664; and further see Milliken v. Green, Mich.Sup.Ct., 203 N.W.2d 457, decided December 29, 1972, and presently unpublished; however, a copy was supplied by West Publishing Company. Because of the similarity of state constitutional provisions it may be of particular interest in Wyoming.

present evidence, and that, therefor [sic] the information then (and now) in the record was incomplete and could not be a basis for a factual decision by any tribunal." Appellants ignore the fact that on September 29, 1971, a hearing was had on the one-district plan after published notice. A transcribed report of that meeting appears in this record. A roster was kept and request made that those in attendance sign it. This evidences the attendance of 175 persons, or more if some failed to register. Among those present and appearing on the list are the appellants O'Brien, Kluherz, and Booth. Mrs. George Marlatt was listed as attending and if our assumption is correct that she is the wife of appellant George Marlatt, we might infer he was advised of this meeting and acquainted with the proceedings. Copies of a one-district plan were available to attendants at that meeting. Much opposition to this plan was expressed but this was almost entirely directed to administrative detail and accountability of trustees to the patrons. In addition, written protests were solicited, which appear in the record.

The one-district plan which was approved by the state committee was the plan discussed and presented at this meeting as evidenced by the minutes of the county committee on November 22, 1971. After the defeat of a motion to ask the state committee to write the plan, it was moved "that we submit the one School District Plan for Goshen County that a Public Hearing was held in regard to on September 29, 1971." This motion carried and the plan was submitted.

█ Appellants contend that by virtue of this being a non-contested case under Rule 72.1(h), W.R.C.P., they were entitled to present other evidence and to have the district court determine certain of these issues. This rule is not to be construed as in any manner repealing or modifying § 9–276.32(c), W.S.1957, 1971 Cum.Supp., which defines the areas of the court's review. This is a non-contested case, Lund v. Schrader, Wyo., 492 P.2d 202, 209. The

reorganization process is a delegated legislative function, Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 260 P. 537, 539; School Districts Nos. 2, 3, 6, 9, and 10, in County of Campbell v. Cook, Wyo., 424 P.2d 751, 759. Both these factors negative the necessity of a trial-type hearing, Lund v. Schrader, supra; School District No. 23 of Dakota County v. School District No. 11 of Dakota County, 181 Neb. 305, 148 N.W.2d 301, 303; 1 Davis, Administrative Law Treatise, ch. 7, § 7.06, p. 430 (1958). It is further interesting to note that it has been held that a legislature cannot constitutionally delegate to the courts the power of laying out or altering boundaries of school districts, this being a legislative function, North v. Board of Education of Community High School Dist. No. 203, 313 Ill. 422, 145 N.E. 158, 159. An excellent expression appears in the Oregon case of School District No. 7 of Wallowa County v. Weissenfluh, 236 Or. 165, 387 P.2d 567, 570:

"Whether the board's action is denominated as legislative or judicial is, however, unimportant and the attempt to make the distinction is perhaps fruitless. * * *

"It is true that the board's action in altering school district boundaries may affect a citizen in a variety of ways; in the amount of taxes he will have to pay, the distance his children will have to travel to school, the quality of instruction his children will receive, and other consequences. But residents and taxpayers do not have any personal or property rights in a particular school district boundary arrangement which are entitled to be asserted in an adversary proceeding in frustration of the board's effort to carry out its policy-making function."

We see no reason to abandon or disclaim one of the holdings and rationale of Lund v. Schrader, supra, as articulated by Justice McIntyre when he said, 492 P.2d at page 209, "We find nothing in the Wyoming School District Organization Law of 1969 which suggests the holding of trial-

type hearings by either the county committee or state committee."

■ Appellants strongly contend that the trial court had no power to remand this matter to the county committee for the purpose of making findings to clarify the reasons for making the allocation of the bonded indebtedness equitable by spreading it throughout the district, and that the trial court had no power to remand it to the county committee for the determination and correction of any errors or misdescriptions in the definitions of the boundaries and the trustee residence districts or the boundaries of the school boards, both of these determinations to be subject to approval by the state committee. The basis of the objection to both of these remands is that the power of said committee has been terminated and its power expired by virtue of the statute. We see no reason, nor has any cogent argument been suggested, why we should not follow the procedure set out in Lund, supra, or why we should reverse the holding thereof in reference to the continued power of the committee existing until all reorganization shall have become final.

■ In support of a contention that the entire plan is void because of errors in the description defining the school district and certain trustee areas, and that therefore it would be improper to remand it to the county committee, appellants have cited two authorities involving defective descriptions in deeds, one of which is the case of De Long v. Starkey, 120 Ind.App. 288, 92 N.E.2d 228, and insist the same reasoning is applicable to a school district. In this last mentioned case the court did not hold the deed nugatory but relied upon the old established equitable maxim, 92 N.E.2d at 230, that "That which may be made certain is certain." Complete technical accuracy in such descriptions is not essential and slight irregularities and inaccuracies do not render such proceedings void, School Board of Joint District No. 2, Towns of Herman, etc. v. State Superintendent of Public Instruction, 20 Wis.2d 160, 121 N.

W.2d 900, 905–906; School Directors of District No. 5 v. School Directors of District No. 10, 73 Ill. 249, 253 (1874); 78 C. J.S. Schools and School Districts § 44, p. 735.

■ Appellants assert a violation of their constitutional rights by virtue of the order in this particular case, as appears in the petition for review:

"The said Decision and Order directs and authorizes the proposed new School District to allocate, collect, budget and levy monies and taxes and to assume the existing bonded indebtedness and contractual obligations of the now existing school districts contrary to the provisions of Article 1, Section 28, of Article 1, Section 33, of Article 3, Section 27, of Article 3, Section 37, of Article 3, Section 40, of Article 15, Section 13, of Article 16, Section 4, all of the Wyoming Constitution, and of amendment XIV of the Constitution of the United States; and insofar as the provisions of the Wyoming School District Organization Law of 1969 (Section 21.1–105 Wyoming Statutes 1957 as amended, et seq.) authorize the proposed new School District to perform said functions, the same are unconstitutional."

There was of course earlier in this petition a general and conclusory statement that the parties were aggrieved and adversely affected. An examination of the brief of the appellants, their argument, and offer of proof, discloses no further suggestion or demonstration how the appellants or any of them were directly adversely affected or in what manner. For aught that is shown they may be benefited thereby.

■ To invoke the jurisdiction of the courts and secure decisions on questions involving claimed constitutional violations there are certain familiar oft-repeated conditions. The party asserting the violation must show an adverse effect upon his rights, Powers v. City of Cheyenne, Wyo., 435 P.2d 448, 452, rehearing denied 436 P. 2d 961, and cases cited therein. The burden is upon the one asserting the claim to

demonstrate this violation, Cuthbertson v. Union Pacific Coal Co., 50 Wyo. 441, 62 P.2d 311, 315, and the manner in which he is so adversely affected, Miller v. Board of County Commissioners of County of Natrona, 79 Wyo. 502, 337 P.2d 262, 271. Miller cites with approval the case of Burton v. School Dist. No. 19, 47 Wyo. 462, 38 P.2d 610, 612, wherein the following pertinent observation is made:

" * * * The duty to show an act to be in contravention of the Constitution is upon him who asserts that to be true. * * *"

A particularly applicable observation was made in Miller when it was said:

" * * * This means that the person contesting the constitutionality of a statute must do more than make bald assertions of what he thinks is discriminatory. * * *"

■ There is another reason we deem it improper to determine the constitutionality of this order upon the state of the record. As has been said in Tharp v. Unemployment Compensation Commission, 57 Wyo. 486, 121 P.2d 172, 178:

" * * * Besides this court has said in Salt Creek Transportation Co. v. Public Service Commission, 37 Wyo. 488, 263 P. 621, 622: 'Constitutional questions are too important to be answered by this court at random, and they should not be answered unless fully presented.' * * *"

■ Appellants' contention that there is a violation of the one-man one-vote principle is set out as follows:

"The trustee areas established by said Decision and Order do not provide for proper representation under the one man-one vote theory contrary to Amendment XIV of the Constitution of the United States, and insofar as the provisions of the Wyoming School District Organization Laws of 1969 (Section 21.-1–105 Wyoming Statutes 1957 et seq.) authorize the election of trustees as provided in said Decision and Order, the same are unconstitutional."

However, the record and offer of proof directed at this alleged constitutional impingement of their rights reveal they had no standing to raise the question, even if we consider as proper and proven the offer of proof which was as follows:

" * * * We would like to place evidence before the Court to indicate that the appellants residing in the Trustee Area E as defined under this plan and the Trustee Area E is being discriminated against. * * *"

Had this evidence been received it would only have demonstrated that those residing in Trustee Area E have one trustee for approximately 675 residents. Trustee Area A has two trustees and 3200 residents. Thus Trustee Area E has not been discriminated against and has no basis for a claim of any discrimination. The question then is not one before us, Lund v. Schrader, supra.

It is to be observed that under the approved plan no schools are going to be closed nor bus routes changed, and appellants apparently overlook the fact that if Plan 4 be rejected, by operation of the statute, § 21.1–113, W.S.1957, 1971 Cum. Supp., the state committee would be authorized to reorganize this territory into a unified school district, as we have heretofore noted in Sweetwater County Planning Committee for Organization of School Districts v. Hinkle, Wyo., 493 P.2d 1050, 1052.

We therefore affirm the judgment of the district court under the terms of the original order.

McINTYRE, Justice (dissenting).

I am left wondering what has caused the great turnabout in this case. As far as I am concerned, I am unpersuaded there is anything wrong in our original opinion, which is reported as Johnson v. Schrader, Wyo., 502 P.2d 371. I continue to stand with such opinion in its entirety; and I find no area of agreement in any of the majority's new opinion. The temptation is great to take the new opinion paragraph by

paragraph and point out its fallacies. However, that would serve no useful purpose; and it is sufficient to simply say the original opinion was and is correct in every respect.

Perhaps the thing that disturbs me most is that I read into the new opinion a caveat that administrative agencies, such as the state committee, can do no wrong. Therefore, their actions are final and not subject to judicial review. Of course, my colleagues will disclaim having expressed such a caveat; but I insist what is being said makes a nullity of judicial review.

The new opinion purports to stand on a finding that evidence and information were available to the state committee from which a decision could be made that Plan 3 did not comply with the criteria requirements of § 21.1–109(e), W.S.1957, 1971 Cum.Supp. This overlooks that the state committee had acted *ex parte*, without an opportunity for other interested parties to be heard and furnish evidence. It also overlooks that sub-section (e) requires only that county committees "shall consider" a ratio of average daily membership to assessed valuation as nearly equalized as practicable *among the unified districts in the various counties.*

It is apparent from the record we are dealing with that the county committee in Goshen county had made such a consideration, and indeed the ratio of average daily membership to assessed valuation was equalized better than it has been in many approved reorganization plans in other counties.

The record in this case makes it perfectly clear that the court before whom appellants were seeking a review refused to allow any evidence at all to be introduced. Its statement in that regard was this:

"The Court isn't going to hear any evidence in this hearing, that is to be done by the Board and not by this Court."

Thus, regardless of any explanations my colleagues may seek to make, it remains a fact that appellants have been denied their day in court.

As pointed out in our original opinion, § 21.1–128, W.S.1957, 1971 Cum.Supp., expressly guarantees the right of an appeal from *any final decision of the state committee* to the district court. Thus, the majority cannot justify a denial of judicial review from the final decision of the state committee, by talking about proceedings at other levels. Moreover, Rule 72.1(a), W. R.C.P., and § 9–276.32(a), W.S.1957, 1971 Cum.Supp., allow for the appeal and review appellants properly sought in this case.

We also pointed out in our original opinion that Rule 72.1(h), W.R.C.P., provides that additional material evidence may be presented in noncontested cases like the one here involved. We said, and I do not hear my colleagues disputing it, that the only limiting factor is materiality. Certainly the most important and most material evidence in this case bears on the question of whether Plan 3 met the criteria requirements of § 21.1–109(e).

Therefore, I repeat again, regardless of any explanation made, appellants definitely have been denied their day in court and their right to review in the courts. In my opinion, the reversal of our original opinion results in a miscarriage of justice and a denial of due process.

The petition for rehearing should be denied.